HILLYARD *v.* BOARD OF SUPERVISORS OF ELECTIONS FOR MONTGOMERY COUNTY, MARYLAND ET AL.

[No. 247 (Adv.), September Term, 1970.]

*Per Curiam Order August 17, 1970.*

*Opinion Filed September 17, 1970.*

### PER CURIAM ORDER

For reasons to be given in an opinion to be filed later, it is this 17th day of August, 1970, by the Court of Appeals of Maryland

ORDERED that the order of the Circuit Court for Montgomery County of August 1, 1970 be, and it is hereby, reversed and that the appellant, Robert L. Hillyard be, and he is hereby, declared eligible to be a Republican candidate for the House of Delegates, Delegate District One of Montgomery County, Maryland.

The mandate shall issue forthwith. Costs to be paid by the appellees.

The cause was argued before HAMMOND, C. J., and BARNES, MCWILLIAMS, SINGLEY, SMITH and DIGGES, JJ.

*John C. Keating* for appellant.

*H. Thomas Sisk,* with whom were *John P. Diuguid* and *Carr, Scott, Thompson & Diuguid* on the brief, for appellees.

HAMMOND, C. J., delivered the opinion of the Court.

By per curiam order of August 17, 1970, we reversed the ruling of the Circuit Court for Montgomery County that the appellant Robert L. Hillyard could not run for the House of Delegates from Delegate District One of Montgomery County because he had not lived for a year in that District. Our reasons for disagreeing with the views of Judge Mathias are these.

The Supreme Court, in *Maryland Committee v. Tawes,* 377 U. S. 656, 12 L.Ed.2d 595, 607, suggested that:

"With the Maryland constitutional provisions relating to legislative apportionment hereby held unconstitutional, the Maryland Legislature presumably has the inherent power to enact at least temporary reapportionment legislation pending adoption of state constitutional provisions relating to legislative apportionment which comport with federal constitutional requirements."

The legislature could and did take a hint and at the Special Session of 1965 enacted the statutes now appearing in the Code (1969 Cum. Supp.) in Art. 40, §§ 42 to 42E (General Assembly) under the subtitle "Apportionment" to provide, among other things, for legislative districts in the more populous counties. Section 42B (e) provides:

"All Delegates in a county which has districts shall be residents of and elected from their respective districts, and they shall not be elected from the entire county; and all Delegates in Baltimore City shall be residents and elected from their respective districts, and they shall not be elected at large from Baltimore City. The Delegates shall have qualifications and residential requirements as provided in § 9 of Article 3 of the Constitution of Maryland."

Section 9 of Article III of the Constitution of Maryland provides:

"No person shall [be] eligible as a Senator or Delegate, who at the time of his election, is not a citizen of the State of Maryland, and who has not resided therein, for at least three years, next preceding the day of his election, and the last year thereof, in the County, or in the Legislative District of Baltimore City, which he may be chosen to represent * * *."

It is conceded that the appellant Hillyard has resided in Maryland for the specified three-year period and has been a resident of Montgomery County for the last year of that period. It is undisputed that he moved from another part of Montgomery County to Legislative District Number One of Montgomery County on June 25, 1970, and has since been a resident of that District. The question at issue is whether Hillyard must have been a resident of the District for the year preceding the election in order to be eligible to run for the legislature as a representative of that District or whether his residence in the County for at least a year will suffice. Judge Mathias said:

"In construing a statute or a constitutional provision, the duty of the Court is to ascertain and give effect to the intent and purpose of such statute or constitutional provision. It seems to us to be the clear intent and purpose of Section 9 of Article III [of the Constitution] to require that a delegate reside for a year before election day in the geographic area which he may be chosen to represent, be that a legislative district in either a county or Baltimore City, or an entire county. If we pay heed to the punctuation of Section 9 of Article III, we will note that it does not say that a delegate need live only for a year in the county. What it says is that a delegate must live in the county *which he may be chosen to represent* for a year next preceding the day of his election. But Mr. Hillyard seeks to represent a district not a county. It would seem logical and reasonable to conclude, therefore, that what was really intended is that the residence requirements be applicable to the geographic area represented by the delegate. To hold otherwise would be to create an inconsistency, and illogical non-uniformity. For what reason would there be to require that a delegate from Baltimore City live for at least

> one year in the legislative district which he may
> be chosen to represent but that in the counties
> which have similar legislative districts a differ-
> ent rule be applied?"

We cannot construe the controlling statute as did Judge Mathias. The legislature, by incorporating in § 42B (e) by reference the constitutional requirements as to residency of candidates for the House, made the statute say only that an eligible candidate must be a resident of the district he seeks to represent and have been a resident of the County for a year. This is plainly and unambiguously said and the intent of the legislature is to be gathered, if reasonably possible, from what it says. Justicial supposition as to what the legislature must have meant or should have meant cannot be substituted for an intent clearly revealed by the words used. If the result the language of the statute produces is bizarre or preposterous, there may be compelled the conclusion that the apparent intent was not the real intent, but we do not have that situation here.

That the legislature intended what it said as to the residency of delegates is suggested by the manner in which it dealt with the residency of senators. Chapter 2 of the Laws of the Special Session of 1965 provided (in what is now § 42E (c) of Art. 40 of the Code) that to be eligible as a candidate for the Senate a person must be a citizen of Maryland who has resided therein for at least three years next preceding his election and for the last year in the State senatorial district which he may be chosen to represent. In May 1966 the Attorney General advised the Secretary of State, 51 Op. A.G. 82, 83, that:

> "Article III, Section 9 of the Constitution of
> Maryland provides that 'No person shall [be]
> eligible as a senator or delegate, who at the time
> of his election * * * has not resided therein, for
> at least three years, next preceding the day of
> his election, and the last thereof, in the county
> * * * which he may be chosen to represent

\* \* \*.' \* \* \* Chapter 2 of the Laws of Maryland (Special Session, October, 1965) provides that a Senator must have resided in 'the State Senatorial District which he may be chosen to represent' \* \* \*.

"In the absence of a special provision of the law requiring that a senator reside in the Senatorial *Sub*-district which he seeks to represent, we are of the opinion that the only residence requirement is that imposed in the Constitution, and that any resident of a particular county, which composes a senatorial district, may run in any sub-district wholly within that county. In senatorial districts embracing more than one county, the candidate must have resided in that portion of the county which is a part of the senatorial district which he aspires to represent."

By Chapter 167 of the Laws of 1967 the legislature (whether validly or not) amended § 42E (c) of Art. 40 to require that to be eligible for election as a senator, a person must have resided for a year in the State senatorial district and sub-district. Significantly, we think, no change was made in the residency requirements for candidates for the House.