RICHARD ALLEN WITTEL *v.* GEORGE W. BAKER, JR., ET AL.

[No. 280, September Term, 1970.]

JUDITH ANN BARBEE *v.* WILLIAM R. JONES, ET AL.

[No. 317, September Term, 1970.]

*Decided December 18, 1970.*

532

The cause was argued before MURPHY, C.J., and ANDERSON, ORTH, THOMPSON, and MOYLAN, JJ.

*William B. Somerville*, with *Barry Bach* on the brief, for appellant Wittel.

*John L. Schroeder* for appellant Barbee.

*Joseph I. Pines*, with *Max R. Israelson* and *Samuel O. Jackson, Jr.*, on the brief, for appellees Baker.

*Clyde C. Henning,* with *Louis D. Harrington* on the brief, for appellees Jones.

ORTH, J., delivered the opinion of the Court.

The question before us is whether Md. Code, Art. 67, § 4 (b) (Acts 1969, ch. 352, § 1 b) is to be applied prospectively or retrospectively. We hold that it applies only to those actions brought pursuant to Code, Art. 67, § 1 in which the death of a wrongfully killed spouse or minor child occurred on or after 1 July 1969.

## I

The statutory law of this State, in derogation of the common law, enables an action at law to be maintained against a person or vessel causing the death of a person by wrongful act, neglect or default. Code, Art. 67, § 1.; *McKeon v. State, ex rel Conrad,* 211 Md. 437. Such action may be for the benefit of the spouse, parent (including the mother of an illegitimate child), and child (including an illegitimate child whose mother's death was so caused) of the deceased, and, if there be no such person, then any person related to the deceased by blood or marriage who was wholly dependent upon the deceased, including dependents as defined by the Workmen's Compensation Law. Art. 67, § 4 (a); Art. 101, § 58; *Taylor v. State, ex rel. Mears,* 233 Md. 406.[1] The jury may give such damages as they may think proportioned to the injury resulting from such death to the parties respectively for whom and for whose benefit such action is brought, and the amount so recovered, after deducting the costs not recovered from the defendant, shall be divided among the said parties, in such shares as the jury by their verdict find and direct. Art. 67, § 4 (a). This provision as to damages was also contained in the statute of 9 and 10 Vic., ch. 93, known as Lord Campbell's Act, enacted by the English Parliament in 1846. It did not prescribe in

---

1. As to parties plaintiff in such an action see Maryland Rule Q 41. But no more than one action shall lie for and in respect of the same subject matter of complaint. Art. 67, § 4 (a).

terms on what principle the damages were to be assessed. However, when the question of damages first reached our Court of Appeals in *B. & O. R. R. Co. v. State, Use of Mahone*, 63 Md. 135, the Court found it to be settled law under English decisions that damages are not to be given as a solatium for grief or mental suffering but must be founded on pecuniary loss, citing *Blake v. R. R. Co.*, 18 Q. B. 93 and *Franklin v. R. R. Co.*, 3 Hurl. and Nor. 211. Thus damages were based on the pecuniary benefit the person injured by the wrongful death had in the life of the deceased and the claim must be founded on a pecuniary loss, actual or expected. "The right to maintain the action is therefore based on the pecuniary interest of the plaintiff in the life of the person killed, and the value of such interest is the measure by which damages are to be allowed." *B. & O. R. R. Co. v. State, use of Mahone, supra*, at 146. The Court of Appeals consistently adhered to this construction. As recently as 23 January 1969 when it decided *Hutzell v. Boyer*, 252 Md. 227, it quoted with approval *United States v. Guyer*, 218 F. 2d 266, 268 (4th Cir. 1954) : "Under the law of Maryland the measure of recovery for wrongful death * * * is the present value of the pecuniary benefit which the [survivors] might reasonably have expected to receive from [the deceased] if he had not been killed." And see *State ex rel. Parr v. Board of County Commissioners*, 207 Md. 91; *Bowman v. Wolleyhan Transport Company*, 192 Md. 686. It was Acts 1969, ch. 352, § 1 b, codified as Code, Art. 67, § 4 (b) which modified this rule. By it damages may be given as a solatium for grief or mental suffering on the part of relatives of certain deceased. It provides: "In the case of the death of a spouse or a minor child, the damages awarded by a jury in such cases shall not be limited or restricted to the 'pecuniary loss' or 'pecuniary benefit' rule, but may include damages for mental anguish, emotional pain and suffering, loss of society, companionship, comfort, protection, marital care, parental care, filial care, attention, advice, counsel, training, guidance, or education where applicable."

## II

It is urged upon us to jettison the pecuniary loss rule in deciding the cases before us without regard to a retrospective application of § 4 (b). Our attention is directed to the preamble to ch. 352, Acts of 1969:

> "WHEREAS, In actions by those entitled under the wrongful death statute for the death of a person or a minor child, the 'pecuniary loss' rule or the 'pecuniary benefit' rule has been adopted by the Court of Appeals to determine the measure of damages in such cases; and
>
> WHEREAS, The 'pecuniary loss' or 'pecuniary benefit' rule in the case of the death of an adult is determined by measuring the present value of the pecuniary benefit which those entitled might reasonably have expected to receive from that person, had that person not been killed, and in the case of a minor's death, it is determined by measuring the pecuniary worth of the services which the child would have rendered during his life and to subtract from this probable cost of his maintenance, education and upbringing; and
>
> WHEREAS, Strict application of this test in the case of an adult results in a failure of those entitled to recover to be compensated for the loss of probable future companionship, society, comfort, and for the mental anguish, and in the case of a minor's death, the strict application of this test results in a minus figure, since the value of his services lost by death in modern society is generally much less than the probable cost of raising the child; and
>
> WHEREAS, It is desirable to substitute a valid test for determining damages for the fictional test of the 'pecuniary loss' or the 'pecuniary benefit' rule in which emotional factors frequently enter; now therefore, * * *."

On this indication of legislative feeling we are importuned to make changes in the pre-existing law and there is quoted to us the language of the Court of Appeals in *Deems v. Western Maryland Ry.,* 247 Md. 95 at 112-113:

> "[W]hile generally there should be adherence to precedent, the social interest served by certainty must, on occasion, be balanced against the social interest served by equity and fairness, so that the court is enjoined with the duty 'of drawing the line at another angle, of staking the path along new courses, of marking a new point of departure * * *.' Cardoza, *The Nature of the Judicial Process,* 113 (Yale Univ. Press 1955)."

The rule we are asked to jettison was, as has been pointed out, early established, consistently followed and lately affirmed. We are not persuaded that we should discard it other than by legislative directive. Any change that may be deemed advisable must come, we feel, from legislative enactment. And some change has so come. But, despite its pronouncements in the preamble to ch. 352, it is patent that the legislature did not feel that the pecuniary loss rule was utterly wrong, for it superseded the rule only in the case of the death of a spouse or a minor child. We observe that if the death which was the cause of action in *B. & O. R. R. v. State, use of Mahone, supra,* had occurred after 1 July 1969 instead of 1 August 1883, the measure of damages would be the same as it was when the case was decided in 1885 because the person wrongfully killed was the mother of the claimant, and such a deceased parent is not within the ambit of § 4 (b). The legislature had before it whether to make the provisions of § 4 (b) applicable to every wrongful death action but did not do so. The bill as written read: "In every such action, including the death of a minor child, * * *" but was changed before passage to read: "In the case of the death of a spouse or a minor child, * * *."

Since we decline to depart from the established rule

of law as to damages by judicial fiat, our inquiry returns to the application of § 4 (b).

## III

Our first inquiry is whether § 4 (b) concerns matters procedural or matters of substance. "The various categories of matters procedural or those concerning the remedy, and matters of substance, vested or accrued, or not vested or accrued, as well as rights protected by the due process clause, tend to overlap in many instances and are not always easy to accurately recognize or to delineate or define in a given instance." *Janda v. General Motors Corporation,* 237 Md. 161, 168. A statute may be regarded as procedural for some purposes, such as conflict of laws, and as substantive for other purposes. It is clear from the preamble to ch. 352, Acts 1969, set out *supra,* that the statute was remedial—"[i]t is desirable to substitute a valid test for determining damages for the fictional test of the 'pecuniary loss' or the 'pecuniary benefit' rule in which emotional factors frequently enter * * *." But it does not necessarily follow that because it is "remedial" it is not substantive. The term "remedial statute" has been applied (1) to law relating to procedure, that is a law which relates solely to the remedy which may be employed to enforce or to protect a right which already exists; or (2) to a statute which makes a change in the substantive law of the State, but which is designed to correct an inadvertent error made in some prior statute or to change a law which has been found to be undesirable in some respect. *Manuel v. Carolina Casualty Insurance Company,* 136 So. 2d 275, 280 (La. 1961) ; *Wiebe v. Seely, Adminstrator,* 335 P. 2d 379, 398 (Oregon 1959) ; *Field v. Witt Tire Co.,* 200 F. 2d 74, 77-78, (2nd Cir. 1952). We think the statute here made a change in the substantive law of Maryland, changing, at least in part, a law found to be undesirable in some respects. It permitted recovery for damages for solatium in a wrongful death action, which recovery had not theretofore been allowed. This was held to be a new cause of action, and

a substantive matter, in *Smith, Administrator v. Mercer, et al.*, 172 S.E.2d 489 (N. C. 1970). And it has been held to be a substantive matter when an amendment entitled recovery "in addition to damages now recoverable in such actions, the expenses incurred for medical and surgical care and for nursing of the deceased, and such other expenses, caused by the injury which resulted in death, as could have been recovered by the injured person in his lifetime; and * * * also * * * the reasonable funeral expenses * * *." *Regan v. Davis*, 138 A. 751, 753-754 (Pa. 1927). And it has been so held as to a statute merely increasing the monetary limit that was permitted to be recovered. *Monroe v. Chase, et al.*, 76 F. Supp. 278, 279 (D. C. Illinois 1947); *Keeley v. Great Northern Ry. Co.*, 121 N. W. 167, 170 (Wisconsin 1909). See *Conn. v. Young*, 267 F. 2d 725 (2d Cir. 1959); *Zontelli Brothers v. Northern Pacific Railway Co.*, 263 F. 2d 194 (8th Cir. 1959); *Muckler v. Buchl*, 150 N.W.2d 689 (Minn. 1967). And see also *U.C.J.F.B. v. Bowman*, 249 Md. 705.

We find that within the frame of reference of retroactivity *vel non*, the provisions of § 4 (b) were within the category of matters of substance. But we cannot say that the matters of substance with which the statute was involved were constitutionally protected. It did not divest or affect vested rights, or impair the obligation of a contract, or violate the due process clause, or operate as a bill of attainder or an *ex post facto* law. Compare *Theodosis v. Keeshin Motor Express Co.*, 92 N.E.2d 794 (Illinois 1950) holding that an increase of maximum damages recoverable under a wrongful death statute was not retroactive because "the right of defendants to exemption from liability in excess of $10,000 is one of those rights which, having accrued prior to the passage of the act, cannot be affected by it." At 802.

## IV

"It has been stated so frequently by [the Court of Appeals], and others, that the 'primary', the 'fundamental', and the 'cardinal' rule in the construction of statutes is

to effectuate the real and actual intention of the legislature, that it no longer requires the citation of authorities to support the proposition." *Height v. State,* 225 Md. 251, 257. See *U.C.J.F.B. v. Bowman, supra,* at 708. Except that a statute, even if the legislature so intended, will not be applied retrospectively to divest or adversely affect vested rights, to impair the obligation of contracts, or so as to violate the due process clause, or to operate as a bill of attainder or an *ex post facto* law, *Janda v. General Motors, supra,* at 169, the courts, under the cardinal rule, should ascertain whether the legislative intent was to have an Act apply prospectively or retrospectively and give that intention effect. When the legislature provides in the Act how it is to be applied the legislative intent is clear. When it does not so expressly or implicitly provide, certain presumptions arise as an aid in determining the legislative intent. "The general presumption is that all statutes, State and federal, are intended to operate prospectively and the presumption is found to have been rebutted only if there are clear expressions in the statute to the contrary. Retroact[ivity], even where permissible, is not favored and is not found, except upon the plainest mandate in the Act." *Bell v. State,* 236 Md. 356, 369, as quoted in *State Farm v. Hearn, Adm'x,* 242 Md. 575, 582. *State Farm* adds, "This rule of construction is particularly applicable where the statute adversely affects substantive rights rather than only altering procedural machinery." See *U.C.J.F.B. v. Bowman, supra,* at 708. The general presumption was set out in certain terms in *Tax Comm. v. Power Company,* 182 Md. 111, 117:

> "It is well settled that a statute will not be given a retrospective operation, unless its words are so clear, strong and imperative in their retrospective expression that no other meaning can be attached to them, or unless the manifest intention of the Legislature could not otherwise be gratified. * * * An amendatory Act takes effect, like any other legislative enactment, only

> from the time of its passage, and has no application to prior transactions, unless an intent to the contrary is expressed in the Act or clearly implied from its provisions."

This general presumption was recognized by the Court of Appeals over 100 years ago in *Williams v. Johnson,* 30 Md. 500 (1869) in substantially the same language used in *Tax Comm. v. Power Company* and the Court observed, at 507-508; "[I]t is a sound rule of construction, founded in the wisdom of the common law, that whenever a statute is susceptible without doing violence to its *express* terms, of being understood either prospectively or retrospectively, courts of justice invariably adopted the former construction." The rule as stated in *Tax Comm. v. Power Company* was set out in comparable language in *Appeal Tax Court v. Western Maryland R. R. Co.,* 50 Md. 274, 293-294; *Hemsley v. Hollingsworth,* 119 Md. 431, 441; *Vandiver v. Fidelity Savings Bank,* 120 Md. 619, 624; *Dryden v. Baltimore Trust Co.,* 157 Md. 559, 563 (the Court said: "This is the rule uniformly applied by this court in many decisions unnecessary to cite at this time.") ; *Dashiell v. Holland Maide Candy Shops,* 171 Md. 72, 74 (quoting with approval *Williams v. Johnson, supra*) ; *Diamond Match Company v. State Tax Commission,* 175 Md. 234, 239-240. And see 50 Am. Jur., *Statutes,* § 478.

There is no express provision in the Act codified as Art. 67, § 4 (b) as to what cases it is to apply.[2] It states only that it "shall take effect July 1, 1969." We note that in 1968 the General Assembly passed House Bill 790. Its

---

2. Only once in the various acts, amending what is now § 4, did the legislature designate when an act was to be applicable as distinguished from its effective date. Section 2, ch. 38, Acts 1937, concerning illegitimate children, effective 1 June 1937, provided that it "shall apply to all suits in which the wrongful act, neglect or default causing death shall occur on or after said effective date." A proposed § 2 of ch. 751, Acts 1959 (§ 1 of which extended the limitation period to two years), stated that the amendment "shall apply only to those cases in which deaths occur on or after the effective date of this act", but it was stricken before enactment. See discussion of House Bill 790, 1968, *infra.*

§ 1 (b) authorized the awarding of damages for solatium as does the present statute but only in actions "which includes the death of a minor child" and then to a limit of $15,000. It provided "that this subsection shall apply only to those causes of action arising after July 1, 1968;" the Act was to take effect July 1 1968. H. B. 790 was vetoed by the Governor on 7 May 1968, because its sponsor, the House Majority Leader, had written him "expressing some doubts about the interpretation of the new provisions and asking that it be vetoed." *Laws of Maryland* 1968, p. 1653. It is argued that since the legislature expressly intended the 1968 Act to apply only to those causes of action arising after its effective date, the failure to so provide in the Act of 1969 indicates a legislative intent that the 1969 Act be retrospectively applied. We are not persuaded by the argument that the legislature could have specifically provided for prospective application if it so intended, for as we have seen, the firmly established general rule is otherwise, *i.e.*, "unless [the statute's] words are so clear, strong and imperative in their retropective expression that no other meaning can be attached to them, or unless the manifest intention of the Legislature could otherwise not be gratified." See *Dixon v. Checchia*, 249 Md. 20, 24. We do not find in the 1969 Act words so clear, strong and imperative in their retrospective expression that no other meaning can be attached to them. And we cannot say that the manifest intention of the legislature could not be otherwise gratified unless the Act be given retrospective application.

As no intent to the contrary is expressed in the Act or clearly implied from its provisions, the general presumption that it is to operate prospectively prevails, there being nothing to rebut it. Therefore, Art. 67, § 4 (b) is not to operate retrospectively but is to be applied prospectively.

We find persuasive authority in other jurisdictions for this view. By the overwhelming weight of authority statutes which impose, remove or change a monetary limitation of recovery for personal injury or death and statutes

which change the manner and method of distribution of recovery or settlement for wrongful death are prospectively applied. See 98 A.L.R.2d 1105-1116; 66 A.L.R.2d 1444-1452. And see *Herrick v. Sayler,* 245 F. 2d 171 (7th Cir. 1957) and foreign cases *supra.*

We see nothing in *Janda v. General Motors, supra,* to compel a holding that § 4 (b) is to be other than prospectively applied. We consider the four rules set out in *Janda* as to retrospective or prospective application of a statute to be no more than a restatement of the law previously established and followed in this jurisdiction as discussed *supra.* See *State Farm v. Hearn, Adm'x, supra; Typographical Union v. Hearst,* 246 Md. 308; *Dixon v. Checchia, supra; U.C.J.F.B. v. Bowman, supra.*

## V

Having determined that § 4 (b) shall not operate retrospectively we reach the test of prospectivity set out in our holding, *i.e.,* the section applies only to actions in which the wrongful death of a spouse or minor child occurred on or after the effective date of the Act, 1 July 1969. We adopt this test because the cause of action accrues on death, not on the commission of the tort. No action for wrongful death can be maintained until death has occurred; a person or vessel is liable for damages when *death* ensues from the tort. Code, Art. 67, § 1. And we observe that the legislature has consistently begun the limitation period within which such action shall be commenced with the date of death of the person wrongfully killed.[3]

## THE INSTANT CASES

The two cases before us were argued together.
*Appeal No. 317*

An action was brought in the Circuit Court for Montgomery County on 9 July 1969 by William R. Jones and

---

3. "[E]very such action shall be commenced within twelve calendar months after the death of the deceased person." Acts 1852, ch. 299, § 2. Acts 1950, ch. 89 substituted "eighteen months" for "twelve calendar months." Acts 1959, ch. 751 substituted "two years" for "eighteen months."

Virginia C. Jones, appellees, as surviving father and mother of Wilene Virginia Jones, deceased, an infant, against Judith Ann Barbee, appellant. Appellant demurred on the grounds that the declaration alleged that "the plaintiffs have lost the benefits and advantages of the society and companionship of their daughter as well as the earnings of said daughter, and have suffered mental anguish, emotional pain and suffering, loss of society and comfort as a direct and proximate result of the negligence of the defendant." The accident was declared to have occurred on 10 September 1967, the infant's death occurred the same day. Appellant claimed that prior to 1 July 1969 there was no cause of action for the losses and injuries alleged. The lower court overruled the demurrer on 16 December 1969, concluding as a matter of law that § 4 (b) was "applicable to causes of action which accrued prior to the effective date thereof [July 1, 1969]." The case went to trial on the main issue and the jury found for the appellees and rendered a verdict for damages in their favor in the amount of $12,500 "for mental anguish, emotional pain and suffering, loss of society, comfort and loss of companionship." It rendered a verdict "for damages for the pecuniary loss in the amount of zero." Judgment in the amount of $12,500 in favor of appellees against appellant was duly entered and appellant appealed therefrom. She contends that the lower court erred in overruling her demurrer, Maryland Rule 345 (d), and in instructing the jury over her objection and exception, that they were not limited in assessing damages to the pecuniary loss or pecuniary benefit rule "but may include damages for mental anguish, emotional pain and suffering, loss of society and comfort."

As the death of Wilene Virginia Jones occurred prior to 1 July 1969, Art. 67, § 4 (b) is not applicable to the action for her wrongful death. We hold that the lower court erred in overruling the demurrer; we find that it should have sustained the demurrer with leave to amend. Maryland Rule 345 (e). We also hold that the lower court erred in its instructions to the jury that they were not

limited in assessing damages to the pecuniary loss rule. We reverse the judgment and remand with direction to the lower court to sustain the demurrer with leave to amend in accordance with this opinion.

*Appeal No. 280*

George W. Baker, Jr., surviving father of Robert Burton Baker, deceased infant, to his own use and to the use of Jane Baker, surviving mother, appellees, brought an action on 26 January 1968 in the Superior Court of Baltimore City against Richard Allen Wittel, appellant, pursuant to Art. 67, §§ 1 and 4. On 2 July 1969 appellees amended their action to include damages permitted by § 4 (b). On 9 December 1969 they filed a motion for declaratory relief pursuant to the Uniform Declaratory Judgments Act. Code, Art. 31A; Maryland Rule 613. They asked that a declaratory judgment be entered declaring that § 4 (b) applies to the action pending for the wrongful death of their minor child and to the measure of damages to which they may be entitled. The lower court accepted the motion as an application to decide a question of law pursuant to Maryland Rule 502 and, in advance of the main issue, decided that § 4 (b) was "applicable in determining the measure of damages in the instant case." Appellant appealed from the ruling.

Maryland Rule 502 (a) provides:

> "At any stage of the action, the court may, on application of any party or of its own motion if it shall appear that there is a question of law which it would be convenient to have decided before going further, direct such question to be raised for the court's decision in such manner as the court may deem expedient. All such further proceedings as may be rendered unnecessary by the decision of such question shall upon the decision be stayed. Such proceedings as show the questions so decided and the decision thereon shall form a part of the record *and be reviewable upon appeal after final judgment.*"
> (emphasis supplied)

As the decision of the lower court in this case is not reviewable upon appeal until after final judgment, the appeal is premature and must be dismissed. Compare *Buckler v. Safe Deposit and Trust Co.*, 115 Md. 222. We observe, however, that our holding in this opinion as to the application of § 4 (b) would be controlling in the case, and were the point properly before us, we would hold that § 4 (b) is not applicable to the recovery of damages resulting from the death of Robert Burton Baker, a minor child, because his death occurred prior to 1 July 1969.

> *Appeal No. 317:*
> *Judgment reversed and case remanded for further proceedings in accordance with this opinion; costs to be paid by appellees.*
> *Appeal No. 280:*
> *Appeal dismissed; costs to be paid by appellant.*