BENJAMIN ZITOMER et al. *v.* HERMAN I. SLATE et al.

[No. 673, September Term, 1973.]

*Decided June 27, 1974.*

710

The cause was argued before POWERS, DAVIDSON and MOORE, JJ.

*James D. Newton,* with whom was *William F. Hickey* on the brief, for appellants.

*William A. Ehrmantraut,* with whom were *Joseph Montedonico* and *Donahue & Ehrmantraut* on the brief, for appellee Leland Memorial Hospital, Inc. *Thomas J. Scanlon* for other appellee.

MOORE, J., delivered the opinion of the Court. POWERS, J., concurs and filed a concurring opinion at page 730 *infra.*

Appellants are the surviving husband and children of Ruth Miriam Zitomer who died on November 6, 1969 as a result of the alleged malpractice of her doctor and of the hospital where she was treated for injuries sustained in an automobile accident.

On the date of her demise, a two-year period of limitations was applicable to actions for wrongful death under the then existing provisions of Code, Art. 67, § 4. Accordingly, the action would then have been barred as of November 6, 1971. A two-count declaration for wrongful death was filed in the Circuit Court for Prince George's County on July 13, 1972, approximately 2 3/4 years after Mrs. Zitomer died. Effective on July 1, 1971, however, the General Assembly of Maryland had enlarged the period of limitations to three years.[1] Therefore, if this amendment was applicable, the declaration was timely.

The 1971 amendment contained a separate section providing that the new three year period of limitations

---

1. Appropriate citations and explanatory comment appear in the body of this opinion.

contained in the first section "shall be applied prospectively and retrospectively to have effect upon or application to any cause of action arising prior to July 1, 1968." The latter section was held unconstitutional by the Court of Appeals of Maryland on June 13, 1972 in *Smith v. Westinghouse Electric Corp.*, 266 Md. 52, 291 A. 2d 452.

Essentially upon the authority of *Westinghouse* and of the decision of the Court of Appeals in *Blocher v. Harlow*, 268 Md. 571, 303 A. 2d 395, decided April 11, 1973, the lower court granted appellees-defendants' motions for summary judgment, holding that the three year statute of limitations was unavailing and that the cause of action was barred by the two year period of limitations effective on November 6, 1969, the date of death.[2]

On this appeal from those judgments, we are confronted with two fundamental issues:

(1) Does the General Assembly of Maryland have the power to enact a statute enlarging the period of limitations as to a cause of action for wrongful death not barred by the original limitation period, namely, the period of limitation in effect when the cause of action arose?

(2) If such power exists, did the Legislature intend in the instant case to apply the new three year period to a cause of action in existence but not barred as of the effective date of the amendment, namely, July 1, 1971?

For the reasons hereinafter stated, we conclude that these questions must be answered in the affirmative and that the judgments below must be reversed and the cause remanded for further proceedings.

---

**2.** The trial court also relied upon and incorporated, as part of its oral · disposition of the motions, the opinion of the Circuit Court for Anne Arundel County in the case of Adams, et al. v. Culp, et al., Law No. C-7104, dated August 16, 1973.

## I

Effective July 1, 1971 the General Assembly, by Ch. 784, Laws of 1971, repealed and re-enacted with amendments, subsection (a) of Art. 67, § 4, "Action for wrongful death," to read in pertinent part: ". . . provided . . . that every such action shall be commenced within three years after the death of the deceased person." [3] The purpose of the enactment, as stated in the preamble, was as follows:

> "WHEREAS, the General Assembly desires to bring the statute of limitations for wrongful death actions in uniformity with that of other negligence actions.
>
> "WHEREAS, there is no logical reason for the variance between the time limits for commencement of actions.
>
> "WHEREAS, citizens may be misled to their detriment by the variance between the respective statutes of limitations resulting in an undue forfeiture of rights."

Section 2 of Ch. 784, as enacted, read as follows:

> "And be it further enacted, That the provisions of this Act shall be applied prospectively and retrospectively to have effect upon or application to any cause of action arising prior to July 1, 1968."

In an official opinion to the Governor dated May 18, 1971, the Attorney General of Maryland expressed the view that the enactment was constitutional for causes of action arising on and after July 1, 1971, *and causes of action upon which the existing two-year statute of limitations has not expired as of July 1, 1971.* (Emphasis added.) 56 Op. Atty. Gen. 222.[4]

---

**3.** Now Courts and Judicial Proceedings Article, § 3-904 (f).

**4.** As noted *infra*, p. 15, the Attorney General also pointed out that the language of Section 2 was "extremely ambiguous" and suggested that the phrase " 'prior to July 1, 1968' was an error in draftsmanship and should have read 'subsequent to July 1, 1968,' " a point "not dispositive of the matter, of course, because of the conclusions already stated."

It is clear, of course, that the 3-year provision is applicable to causes of action arising after July 1, 1971. Appellees vigorously contend, however, that the Legislature was without the power to enlarge the period of limitations for causes of action not barred by the 2-year period of limitations as of July 1, 1971 (even assuming a legislative intent to accomplish that purpose).

Judicial rules formulated as an aid in the determination of whether a statute is to be applied retrospectively or prospectively were collated by Judge Hammond (later Chief Judge) in *Janda v. General Motors Corporation,* 237 Md. 161, 205 A. 2d 228 (1964). Particularly apposite here is the third rule, to the following effect:

> "(3) A statute, even if the Legislature so intended, will not be applied retrospectively to divest or adversely affect vested rights, to impair the obligation of contracts, or so as to violate the due process clause, or to operate as a bill of attainder or an *ex post facto* law. Aside from the disinclination of legislative bodies and courts to make a law operate on past events or transactions, the limitations on retroactive laws are only those which affect all legislation and, *if the Legislature intends a law affecting substantive matters to operate retrospectively and the law does not offend constitutional limitations or restrictions, it will be given the effect intended.*" (Emphasis added.)

Does a defendant possess, as a general proposition, a vested right in a statute of limitations at the time the cause of action against him arises? Plainly not. It is settled that no such right vests nor has a person any vested right in the running of a statute of limitations unless it has completely run and barred the action. The rationale here is that the statute operates on the remedy directly only and does not extinguish the substantive right.[5] 51 Am. Jur. 2d, §§ 22, 28.

5. "Statutes which do not destroy a substantial right, but simply affect procedure or remedies, are not considered as destroying or impairing vested

The cases frequently recognize a distinction, however, between "pure statutes of limitation" and a limitation qualifying a statutory right in which time is made an integral part of the right created, so that there is no right of action independent of the limitation and the expiration of the time limitation extinguishes the right. *See,* for a general discussion, *Wisbey v. American Community Stores Corporation,* 288 F. Supp. 728 (D.C.D. Neb. 1968). To such situation, the rules governing pure statutes of limitation may not be applicable.

It is firmly established in Maryland that the wrongful death statute creates a new liability not existing at common law and that, accordingly, compliance with the statute of limitations for such actions is a condition precedent to the right to maintain the action, the limitation of the remedy being treated as a limitation of the substantive right. *State, Use of Stasciewicz v. Parks,* 148 Md. 477, 129 A. 793 (1925); *State, Use of Dunnigan v. Coburn,* 171 Md. 23, 187 A. 881 (1936); *Smith v. Westinghouse Electric Corporation,* 266 Md. 52, supra. The question we face, therefore, is whether the rule governing "pure statutes of limitations," namely, that a person has no vested right in the running of a statute of limitations if it has not completely run and barred the action, is applicable to the statute of limitation here involved. Otherwise stated, our inquiry must be whether, on the contrary, the right of the appellees-defendants here to exemption from liability at the end of the existing period of limitations "became vested when the wrongful act occurred," *Bretthauer v. Jacobson, et al.,* 75 A. 560 (N.J. 1910), so that retroactive application of the amendment to the statute of limitations would unconstitutionally "divest or adversely affect vested rights."

For guidance as to the applicable rule in Maryland, we are remitted essentially to cases arising under former Code, Art. 93, § 112 (now § 8-103) pertaining to suits against the

---

rights, for there is no vested right in any particular mode of procedure for the enforcement or defense of the right." Kelch v. Keehn, 183 Md. 140, 36 A. 2d 544 (1944).

personal representative "in any action (except slander) which might have been maintained against the deceased."

In *Chandlee v. Shockley*, 219 Md. 493, 150 A. 2d 438 (1959), the Court of Appeals was called upon to construe the period of limitations contained in the statute: ". . . provided, however, that any such action for injuries to the person to be maintainable against an executor or administrator must be commenced within six calendar months after the date of the qualification of the executor or administrator of the testator or intestate." [6]

Appellant claimed that he had been "requested and induced" by the authorized representatives and agents of the deceased's administratrix not to file suit and had been lulled "into a false sense of security in the belief that the said administratrix had waived the benefit of the six (6) months limitation period in cases of this type." The Court first rejected appellant's claim that Art. 93, § 112 was a "survival statute" rather than a statute creating a new cause of action and stated that the narrow question for decision was: "*whether there can be waiver or estoppel as to a statute in which the time proviso is part of the right and not merely a limitation of the remedy.*" It pointed out that "most courts have held that if the statute creates a new cause of action with a time limit as a condition precedent, such limit cannot be extended by waiver or estoppel." Refusing to follow this line of authority as an immutable rule, the Court (Hammond, J., later Chief Judge, writing the opinion) held that the doctrine of waiver or estoppel was, indeed, applicable. The Court quoted at length from *Scarborough v. Atlantic Coast Line Ry. Co.*, 178 F. 2d 253 (4th Cir. 1949), *cert. denied,* 339 U. S. 919, including the following language:

". . . the distinction between a remedial statute of limitations and a substantive statute of limitations is by no means so rock-ribbed or so hard and fast as many writers and judges would have us believe. Each type of statute, after all, still falls into the category of a statute of limitations. And this is

6. This provision now appears in Art. 93, § 8-104.

nonetheless true even though we call a remedial statute a pure statute of limitations and then designate the substantive type as a condition of the very right of recovery. There is no inherent magic in these words.[7]

In *Dixon, et al. v. Checchia,* 249 Md. 20, 238 A. 2d 247 (1968), the Court again construed Art. 93, § 112, this time in a context immediately relevant here. The case involved the retroactive application *vel non* of a 1966 amendment to § 112 which provided, in part, that actions against the estate of a testator or intestate could be instituted *after* the expiration of six months but within the statute of limitation, in the event the deceased was covered by an existing insurance policy at the time of the occurrence. The administrator had been appointed on December 10, 1965 and the amendment became effective June 1, 1966. Plaintiffs brought suit on September 28, 1966. If the pre-1966 § 112 applied the suit

---

7. In discussing the legal permissibility of retroactively applying new law, Sutherland, *Statutory Construction,* § 41.05 (Sands ed. 1973) declares his impatience with essentially the same "legalistic distinction" between remedial and substantive statutes even more roundly:

"Judicial opinions are replete with vapid verbalizations which purport to govern decisions as to the legal permissibility of retroactive application of new law. On close examination, however, most of them turn out to be little more than ways to restate the problem. Probably the most hackneyed example of such a rule is to the effect that a law cannot be retroactively applied to impair vested rights. But the statement of that proposition does nothing more than focus attention on the question as to what circumstances qualify a right to be characterized as 'vested.' "

He continues (§ 41.06):

"Most of the numerous attempts at definition are essentially circuitous in nature, as in the pronouncement that 'a vested right, as that term is used in relation to constitutional guarantees, implies an interest which it is proper for the state to recognize and protect, and of which the individual may not be deprived arbitrarily without injustice.' Thus 'vested right' means simply a right which under particular circumstances will be protected from legislative interference. Judicial attempts to explain whether such protection against retroactive interference will be extended in particular circumstances disclose that decision is governed by elementary considerations of fairness and justice."

The latter point, we note, was also made by the Court in the Scarborough case:

". . . the proper approach is not technical and conceptualistic. Rather, we think should it be realistic and humane. The spirit, not the letter, should control."

was untimely filed, but if the 1966 amendment applied it was timely.

The Court of Appeals noted its holding in *Chandlee* that the limitation period in § 112 is a part of the substantive right that did not exist at common law but is wholly conferred by the statute. It then looked to *Janda v. General Motors, supra,* and the summary there by Judge (later Chief Judge) Hammond of the rules formulated by the courts as aids in the determination of retroactive application of a statute *vel non.* Significantly, the Court did not refer to rule (3), quoted *supra,* to the effect that a statute, even if the Legislature so intended, will not be applied retrospectively to divest or adversely affect vested rights. Instead it observed that "[i]n deciding which law [pre- or post-amendatory] applies, this Court must look to the intent of the Legislature," and it quoted the second of the rules laid down in *Janda,* to wit:

> "(2) Ordinarily a statute affecting matters or rights of substance will not be given a retrospective operation as to transactions, matters and events not in litigation at the time the statute takes effect: '* * * unless its *words are so clear, strong and imperative in their retrospective expression that no other meaning can be attached to them, or unless the manifest intention of the Legislature could not otherwise be gratified.* * * *' (citing cases). An amendatory Act takes effect, like any other legislative enactment, only from the time of its passage, and has no application to prior transactions, *unless an intent to the contrary is expressed in the Act or clearly implied from its provisions.' Tax Comm. v. Power Company,* 182 Md. 111, 117." (Emphasis added.)

In *Dixon* the Court stated (p. 24): "We think rule (2) is controlling." The conclusion was then reached that "there is no clear language in § 112 requiring retroactive application and the Legislature's intent can be carried out by a prospective application."

And in *Blocher v. Harlow,* 268 Md. 571, *supra,* the Court of Appeals reversed a holding of this Court involving construction of the same amendment to Art. 93, § 112 as was before the Court in *Dixon* and reinstated the judgment of the trial court, agreeing with its conclusion "that this case was controlled by *Dixon* [*supra*]." In the course of his opinion, Judge Smith stated for the Court (p. 581):

"There is a substantial body of law to the effect that where a limitation period is stipulated in a statute creating a cause of action it is not to be considered as an ordinary statute of limitations, but is to be considered as a limitation upon the right as well as the remedy, with the result that as to causes of action already accrued at the time of the enactment of a subsequent statute enlarging the limitations period on such causes of action the subsequent statute will not be held applicable so as to extend or enlarge the original limitations period, *particularly where no legislative intent to give the subsequent statute a retroactive application clearly appears from its language.*" (Emphasis added.)

Applying this test, it was observed:

"Examination of Chapter 642 of the Acts of 1966 by which this amendment to § 112 was effected shows *nothing in the act itself to indicate an intent that it be applied retrospectively nor is a clear implication to that effect to be found in the language of the amendment.* As is so often the case in Maryland, we have no legislative history. *We know of no circumstances surrounding its enactment which would mandate retrospective application of the amendment.*" (Emphasis added.)

The Court held that the 1966 amendment of § 112 was not applicable to the case before it.

These cases construing Art. 93, § 112 are clearly apposite to the present case. They involve a period of limitations that is "a part of the substantive right" conferred by the statute,

compliance with which, therefore, is a condition precedent to maintaining an action under the statute — precisely the situation presented by Art. 67, § 4 involved here. It is, we think, the necessary implication of *Dixon* and *Blocher* that appellees here had no vested right in the statute of limitations in force when appellants' cause of action accrued but which had not yet expired at the time of the amendment, for the reason that the Court of Appeals recognized in these cases the permissibility of retroactive application to pending causes conditioned only upon a finding of legislative intent. In other words, retroactive application of an amendment enlarging the period of limitations in wrongful death actions is not precluded as an unconstitutional interference with vested rights, provided the amendment does not purport to revive causes of action barred by the original statute of limitations on the effective date of the amendment. Paraphrasing this Court in *Wittel v. Baker*, 10 Md. App. 531, 272 A. 2d 57 (1970), which held that the 1969 amendment to the Maryland wrongful death statute allowing damages for grief or mental suffering of surviving relatives applied only where the death occurred on or after the effective date of the amendment, the change in the statute of limitations here was within the category of matters of substance, but we cannot say that the matter of substance with which the statute was involved was constitutionally protected. 10 Md. App. at 538.

We conclude, therefore, as did the Court of Appeals in *Dixon* and *Blocher*, that in deciding whether the period of limitations as existing or as amended applies to the cause of action here presented "this Court must look to the intent of the Legislature" and we must ground decision ultimately on the rule that

"[a]n amendatory act takes effect, like any other legislative enactment, only from the time of its passage, and has no application to prior transactions, unless an intent to the contrary is expressed in the act or clearly implied from its provisions."

or, as otherwise said in *Blocher,* quoting 1 Sutherland, *Statutory Construction,* § 22.36 (Sands ed. 1972):

"... unless the legislature has expressed its intent to that effect or such intent is clearly implied by the language of the amendment or by the circumstances surrounding its enactment."

This is in accord with the weight of authority in cases deciding the issue of retroactive application of an enlarged period of limitations to accrued causes of action where the existing period has not yet expired at the time of amendment. As in *Dixon* and *Blocher,* so generally, it is the intent of the Legislature that is deemed controlling. *Callahan v. Chesapeake & O. Ry. Co.,* 40 F. Supp. 353 (D.C.E.D. Ky. 1941); *Wall v. Gillet,* 298 P. 2d 939 (N. Mex. 1956); *Hibler v. Globe American Corp.,* 147 N.E.2d 19 (Ind. App. 1958); *see also* Anno: Limitation — Enlarging Period, 79 A.L.R.2d 1080-1113 at 1109 ff; 51 Am. Jur. 2d, § 41.

## II

Proceeding now to the matter of legislative intent in the enactment of Ch. 784, we find at the threshold the decision of the Court of Appeals in *Smith v. Westinghouse,* 266 Md. 52, *supra,* in which § 2 of Ch. 784 was declared unconstitutional (Proctor, J., specially assigned, writing for the Court).

Unlike the situation in the instant case, in *Smith* the claim of plaintiffs-appellants for the wrongful death of their decedent, which occurred on June 15, 1968, was already barred under the original two-year period of limitations existent immediately prior to July 1, 1971, the effective date of Ch. 784. The declaration in *Smith* should have been filed on or before June 15, 1970, under the two-year provision. The actual filing date was June 9, 1971.

After the trial court granted defendants' motions for summary judgment, it was contended on appeal that the language of § 2, "... *the provisions of this Act shall be applied prospectively and retrospectively to have effect upon or application to any cause of action arising prior to July 1,*

*1968,"* was a valid exercise of legislative power. Rejecting this contention, the Court quoted from the Maryland case of *Stasciewicz v. Parks, supra,* and cases from other jurisdictions holding that the period of limitations in the wrongful death statute is a condition precedent to the right to maintain the action, and declared:

> "The provision of the Laws of 1971, Ch. 784, which purports to give retroactive effect to such Act is unconstitutional in that it violates the provisions of the United States Constitution, Amendment XIV, and the Declaration of Rights of the State of Maryland, Article 23."

Turning to appellees' equal protection argument the Court observed that by purporting to give the Act retrospective effect to any cause of action arising *prior to* July 1, 1968, Ch. 784 had

> "the anomalous result of reviving a cause of action, which would otherwise be barred, where death occurred within three years prior to July 1, 1968, but leaving dead and buried a cause of action *where death occurred on or after July 1, 1968, but prior to July 1, 1969.* The mere recital of this possibility demonstrates that this act deprives appellees of the equal protection of the laws and is, therefore, unconstitutional under the Constitution of the United States, Amendment XIV." (Emphasis added.)

*Smith* thus declared invalid an effort "to revive a cause of action theretofore absolutely barred (and thereby impair vested rights)." *Harlow v. Schrott,* 16 Md. App. 31, reversed on other grounds, *Blocher v. Harlow, supra.* Its subject matter was the class of rights vesting with the expiration of an existing statute of limitations and thereafter enjoying constitutional protection. In purporting to affect those rights the retroactivity provision violated due process, and in dealing unevenly within the class it violated equal protection.

The Court of Appeals in *Smith* was not asked to decide the validity of any other application of the retroactivity terms than to causes of action thus absolutely barred. In our judgment the scope of its holding was not meant to, and may not, extend beyond such applications. We note, on the one hand, as appellants point out, the seemingly unqualified language of the Court in striking down the provision on due process grounds. But we note as well the Court's reliance for its holding on the cases of *Stasciewicz, supra,* and *Danzer & Co., Inc. v. Gulf & Ship Is. Ry. Co.,* 268 U. S. 633 (1925) in both of which the cause of action was barred under the existing period of limitations at the time of the amendatory Act. Especially noteworthy is the Court's statement, in its treatment of the equal protection issue, that defendants in causes arising "on or after July 1, 1968 but *prior to July 1, 1969*" (emphasis added) could not constitutionally be favored over those in causes arising prior to July 1, 1968. This statement, in our view, clearly indicates the Court's understanding that the protections of the Constitution, and hence the reach of its decision, extended only to the class of those possessing vested rights by virtue of the expiration of the existing period of limitations at the effective date of the amendment.

In Sutherland, *supra,* § 44.18, the author quotes with approval the New York case of *Farmer's Loan & Trust Co. v. New York Cent. Railroad,* 236 N.Y.S. 250 (1928) as follows:

"Even where a single section attempts or purports to cover two entirely distinct and separable classes of cases, one properly and the other improperly, it may be upheld as to the class which constitutionally may thus be covered, even though condemned as to the other."

An early Wisconsin case involving the issue of retroactive application of an enlarged period of limitations also contains pertinent language:

"It is true, the language of the act of 1859 is sufficiently general to include a case where the action was barred, as well as one where it was not.

> But we do not suppose that this is a sufficient reason for holding the law inoperative and void in every case. It may be held valid and applicable to that class of actions where it was competent for the Legislature to extend the time for bringing suit."
> *Pleasants v. Rohrer,* 17 Wis. 577 (1863).

The problem of separability, as Sutherland points out (§ 44.02), "is essentially one of application." In Maryland it has been held that even though constitutional and unconstitutional provisions of a statute are contained in the same section, they may be entirely distinct and separable. *Maryland Unemployment Compensation Board v. Albrecht,* 183 Md. 87, 96, 36 A. 2d 666 (1944). It follows that a single section may be upheld in its application to one class of cases even though condemned in its application to another. We conclude that *Smith* does not bar application of the retroactivity provision to causes still pending at the time of the enactment, if a purpose of the Legislature to effect such application is manifested by the provision.

Read literally, § 2 of Ch. 784 belies any purpose of the Legislature to have the Act applied retroactively to causes arising subsequent to July 1, 1969, by its terms limiting such effect to causes "arising prior to July 1, 1968." Quite clearly, however, the section, taken literally, contradicts itself, for causes arising prior to July 1, 1968 would be barred as of the date of enactment of the amendment even under the three year limitations period, unless the absurd purpose were attributed to the Legislature to permit revival of dead claims reaching back indefinitely in the past on the sole condition that suit had been brought upon them more than two but less than three years after the cause arose.[8]

We have previously referred to the Attorney General's

---

8. Maryland's counterpart to the Statute of 9 and 10 Victoria, ch. 93 (Lord Campbell's Act) was originally enacted as ch. 299, Acts of 1852, and carried a 12-month period of limitations. Ch. 89, Acts of 1950 increased the period to 18 months and ch. 751, Acts of 1959 enlarged it to 2 years. A literal reading of the provision, therefore, would permit revival of claims going back at least to 1959, and its "rationale" would seem to extend to claims since 1852 inasmuch as the variance between the limitations for wrongful death and other negligence actions existed from the beginning.

characterization of § 2 as "extremely ambiguous" and his suggestion that the phrase "prior to July 1, 1968" was an error in draftsmanship and should have read "subsequent to July 1, 1968." (*supra*, n. 4). As logically interpreted, the Attorney General believed, the provision would still be invalid as to causes arising prior to July 1, 1969 but "constitutional for causes of action arising on and after July 1, 1971, *and causes of action upon which the existing two-year statute of limitations has not expired as of July 1, 1971.*" (Emphasis added.) Plaintiffs in *Smith*, of course, perceived no benefit in this interpretation of the statute, as their cause of action had arisen prior to July 1, 1968, and they insisted upon, and received, literal application of its terms. We might add, with the Attorney General, that plaintiffs with causes arising prior to July 1, 1969, could have found equally little support in a sensible interpretation of the section because, as applied to their causes, it still transgressed upon vested rights.

We have determined, on the other hand, that application of the provision to causes arising after July 1, 1969 is not constitutionally foreclosed. We are equally of the view that the presumption of the Court of Appeals in *Smith*, for purposes of deciding the appeal before it, that in effect the Legislature meant what it said in limiting retroactivity to causes arising prior to July 1, 1968, is not a presumption we are required to make in considering applicability of the section to another class of causes. We, therefore, write on a clean slate in determining the meaning to be given the language of § 2 requiring that "the provisions of this Act shall be applied . . . retrospectively to have effect upon or application to any cause of action arising prior to July 1, 1968."

The primary rule in the construction of statutes is to effectuate the real and actual intention of the Legislature. *Wittel v. Baker*, 10 Md. App. 531, *supra*; *Height v. State*, 225 Md. 251, 170 A. 2d 212 (1961); *Bouse v. Hull*, 168 Md. 1, 176 A. 645 (1935). The legislative intent is to be sought in the first instance in the words used in the statute and if there is no ambiguity or obscurity in the statutory language there is

usually no need to look elsewhere to ascertain the intent of the Legislature. *Maryland Medical Service v. Carver*, 238 Md. 466, 478, 209 A. 2d 582 (1965). It is a well-established rule of construction that the words of the statute are used in their ordinary and popular sense and if the face of the statute does not show some contradictory intention then the court will look no further. *Department of Motor Vehicles v. The Greyhound Corporation*, 247 Md. 662, 669, 234 A. 2d 255 (1967); *Pressman v. Barnes*, 209 Md. 544, 121 A. 2d 816 (1956); *Maryland Medical Service v. Carver, supra.* As otherwise said, if the language of the statute is plain and free of ambiguity and has a definite and sensible meaning, such is conclusively presumed to be the meaning of the Legislature in enacting the statute. *Celanese Corporation of America v. Davis*, 186 Md. 463, 47 A. 2d 379 (1946); *Amalgamated Casualty Insurance Co. v. Helms*, 239 Md. 529, 212 A. 2d 311 (1965). Yet the real intent must prevail over the literal intent when the literal words of a statute say something that the Legislature could not possibly have meant. *Amalgamated, supra* at 535; *Clark v. Tawes*, 187 Md. 195, 49 A. 2d 463 (1946).

While judicial supposition as to what the Legislature must have meant or should have meant cannot be substituted for an intent clearly revealed by the words used, if the result the language of the statute produces is bizarre or preposterous, there may be compelled the conclusion that the apparent intent was not the real intent. *Hillyard v. Board of Supervisors*, 259 Md. 150, 154, 269 A. 2d 42 (1970). This is usually stated as the rule that statutes are not to be interpreted so as to lead to absurd consequences, *Farber's Inc. v. Comptroller*, 266 Md. 44, 51, 291 A. 2d 658 (1972); *Coerper v. Comptroller*, 265 Md. 3, 6, 288 A. 2d 187 (1972); *The Swarthmore Company v. Kaestner*, 258 Md. 517, 266 A. 2d 341 (1970), or that results that are unreasonable or inconsistent with common sense are to be avoided whenever possible, *State v. Gibson*, 4 Md. App. 236, 247, 242 A. 2d 575 (1968); *Height v. State, supra,* or that the words of a statute will not be construed so as to give them a ridiculous meaning, *State v. Petrushansky*, 183 Md. 67, 72, 36 A. 2d 533

(1944), or that courts should assume that the legislative body intended to reach a reasonable, rather than an unreasonable result. *The Swarthmore Co. v. Kaestner, supra.* In sum, "[w]here words conflict with each other, where the different clauses of an instrument bear upon each other, and would be inconsistent, unless the natural and common import of words be varied, construction becomes necessary," *State Tax Commission v. Potomac Electric Power Company,* 182 Md. 111, 116, 32 A. 2d 382 (1943), and

> "... when there is occasion for construction, the Court, in determining legislative intent, will consider not only the literal meaning of the words 'but their meaning and effect considered in the light of the setting, the objectives and purposes of the enactment, and the consequences that may result from one meaning rather than another * * * with the real legislative intent prevailing over literal intent.' [citation omitted] '[T]he construction should be in harmony with the manifest intent of the act and should not lead to an absurdity.' [citation omitted]." *Sanza v. Maryland State Board of Censors,* 245 Md. 319, 340, 226 A. 2d 317 (1967).

As we have pointed out, the language of § 2, if taken literally, shows a "contradictory intention" of the Legislature to require retroactive application of the enlarged period of limitations and at the same time limit that application in such a way as effectively either to preclude retroactivity or else confer virtual boundless retroactivity on wrongful death claims.

Literally read, therefore, the section produces bizarre and preposterous results, in defiance of reason and common sense, and we have no hesitation in saying that the Legislature could not possibly have meant what the section by its terms says. While this is not a case of words apparently inserted by inadvertence or mistake and which may be rejected as surplusage because they are incapable of any sensible meaning or are repugnant to the rest of the statute and tend to nullify it, *Pressman v. State Tax*

*Commission,* 204 Md. 78, 88, 102 A. 2d 821 (1954), we believe, nevertheless, that the essence of what the Legislature intended in including the retroactivity provision is expressed, not in the words "to any cause of action arising prior to July . 1, 1968," but in the words "shall be applied . . . retrospectively. . . ."

Having in mind the purposes of the amendatory act as forcefully expressed in the preamble, quoted *supra,* we believe the real intent of the Legislature in adding the retroactivity provision was this: that the benefit of the enlarged period of limitations should extend to all persons, consistent with constitutional principles,[9] possessing causes of action for wrongful death and who might *yet* be misled to their detriment by the existing variance in limitations at the time of the enactment and as a result unduly forfeit their rights. This construction of the provision is compelled by reason and common sense and by the obviously remedial nature of the amendment as expressed in the preamble — remedial in the sense defined by Chief Judge Orth in *Wittel v. Baker, supra,* as follows:

> ". . . a statute which makes a change in the substantive law of the State, but which is designed to correct an inadvertent error made in some prior statute *or to change a law which has been found to be undesirable in some respect."* (Emphasis added.)

In *Barrett v. Charlson,* 18 Md. App. 80, 305 A. 2d 166 (1973) in an opinion by Judge Scanlan, we again construed the amendment to Art. 67 permitting damages for grief or mental suffering and observed, based upon the express language of the preamble to that enactment, that it "is remedial in nature and 'should be accorded a liberal construction consistent with the objective sought to be accomplished' by the General Assembly." Chapter 784 is also a remedial effort of the Legislature to correct a very definite

---

**9.** "The court will assume, whenever the provisions of the statute permit, that the Legislature intended its enactment to have effect only within the limits of constitutionality." Maryland Unemployment Compensation Board v. Albrecht, 183 Md. 87, *supra.*

mischief, and accordingly, its retroactivity provision should be liberally construed consistent with the objective of its enactment. We find pertinent here, as did the Court in *Barrett,* language of Justice Cardozo quoting Justice Holmes and speaking for the Supreme Court in *Van Beeck v. Sabine Towing Co., Inc.,* 300 U. S. 342, 350-51 (1937):

> "Death statutes have their roots in dissatisfaction with the archaisms of the law which have been traced to their origin in the course of this opinion. It would be a misfortune if a narrow or grudging process of construction were to exemplify and perpetuate the very evils to be remedied. There are times *when uncertain words are to be wrought into consistency and unity with a legislative policy which is itself a source of law,* a new generative impulse transmitted to the legal system. 'The Legislature has the power to decide what the policy of the law shall be, and *if it has intimated its will, however indirectly, that will should be recognized and obeyed.'* " (Emphasis added.)

It is, of course, axiomatic that the courts may not attempt, under the *guise* of construction, to supply omissions or remedy possible defects in the statute. *Amalgamated Cas. Ins. Co. v. Helms, supra.* A statutory provision that is contradictory in its intention on its face, however, as already indicated, impels construction. We construe § 2 as requiring that the enlarged period of limitations shall be applied prospectively and retrospectively to all persons with wrongful death claims who, consistent with constitutional principles, may yet be misled by the existing variance in limitations as of the date of enactment of the amendment.

So holding, we find inapposite the authority upon which appellees rely in contending that a statute which has been declared unconstitutional is ineffectual as a manifestation of legislative intent. *State v. Ingel,* 18 Md. App. 514, 308 A. 2d 223 (1973); and *see, Johnson v. State,* 271 Md. 189, 315 A. 2d 524 (1974) decided after the date of oral argument in this appeal.

At all events, § 2 of Ch. 784 may properly be looked to as a simple historical record of the intent of the Legislature, however ineptly phrased, to have the enlarged period of limitations applied retroactively. The conclusive "circumstance surrounding [the] enactment," *Blocher, supra,* of Ch. 784 is that the General Assembly has *stated* its intent as to the application of the Act. To annihilate § 2 even as a record — a memorandum — of a purpose to have the protection of the enlarged period of limitations applied retroactively would, in our view, do violence to the principal aim of statutory construction, to effectuate the real and actual intention of the Legislature. *Wittel v. Baker, supra; Height v. State, supra; Maryland Unemployment Compensation Board v. Albrecht, supra.* For, that the Legislature intended the retroactive application of the statute is beyond dispute.

We conclude that the enlargement of the period of limitations in actions for wrongful death is applicable to deaths occurring on or after July 1, 1969.

> *Judgments reversed; case remanded for further proceedings; costs to be paid by appellees.*

*Powers, J., concurring:*

I concur in the reasoning expressed as well as in the result reached in the opinion written for the Court by Judge Moore. I am concerned, however, about the problems which have arisen in the past, and may continue to arise, because of the concept that the time limitation contained in the wrongful death statute is not a true statute of limitation, to be applied only to the remedy, but is a substantive element of the cause of action, or a condition precedent to the right to maintain the action.

When the Court of Appeals first applied this interpretation, in *State v. Parks,* 148 Md. 477, 129 A. 793 (1925), following the overwhelming weight of authority throughout the country, the built-in time period was twelve

months. The statute, patterned after the so-called Lord Campbell's Act in England, had been enacted as Chapter 299, Laws of Maryland, 1852. It had created a new cause of action, one which did not exist at common law, and there was logic in holding that all of the provisions of the statute were substantive elements of the right it created.

It may be that the same logic continued to apply through a series of amendments over the years which changed the time for commencing the action, first to 18 months, then to two years, which enlarged the classes of persons who could assert the cause of action, and which broadened the measure of damages which could be recovered. But those changes signal a trend in legislative policy in the direction of bringing the tort of wrongful death more in line with other torts, at least remedially and procedurally.

By its enactment of Chapter 784 of the Laws of Maryland, 1971, the General Assembly further enlarged the time for commencement of an action for wrongful death from two years to three years. That change now appears in the Code as § 3-904 (f) of the Courts Article. Section 2 of Chapter 784 stipulated that its provisions be applied prospectively and retrospectively. The Court of Appeals held in *Smith v. Westinghouse Electric*, 266 Md. 52, 291 A. 2d 452 (1972) that retrospective application to revive a liability which ceased to exist before the effective date of Chapter 784 was a deprivation of the equal protection of the laws, and was unconstitutional because it violated the 14th Amendment to the Federal Constitution, and Article 23 of the Declaration of Rights of Maryland.

What gives rise to my concern is that the preamble to Chapter 784, quoted in full by Judge Moore in the opinion of the Court in the present case, tells me clearly that it was the wish of the General Assembly to do away with all differences between the time limitations applicable to wrongful death actions and those applicable to other torts.

If I correctly read what the General Assembly wanted to accomplish, I feel it is appropriate to point out that significant differences remain, and how they may be eliminated. The time limitation, although it is now the same

in duration as the three year period fixed in Courts Article, § 5-101 for civil actions at law generally, remains in the statute which creates the cause of action. It therefore remains substantive, not procedural. It remains a condition precedent to the right to maintain the action, and is not a true statute of limitations. *State v. Parks, supra, Smith v. Westinghouse Electric, supra.*

A plea of limitations, filed timely (Maryland Rule 342 d 2), is not required in order to attack a wrongful death action filed late; the question may be reached by a demurrer, or by a motion for summary judgment, and no doubt could be raised for the first time at trial. The disabilities of infancy and insanity, Courts Article, § 5-201, which extend the time limits fixed in § 5-101 and other sections of the same subtitle, do not extend the time for filing a wrongful death action.

Elimination of the built-in time period, consistently construed as a substantive element of the cause of action, would make a wrongful death action merely one of the many civil actions at law subject to the true statutes of limitation.[1] If the General Assembly wishes, as it indicates in the preamble to Chapter 784 that it does, to remove the differences by which "citizens may be misled to their detriment by the variance between the respective statutes of limitations resulting in an undue forfeiture of rights", it can do so by amending Courts Article, § 3-904 (f) to make it say, "An action under this subtitle accrues upon the death of the injured person."

---

1. It should be noted that if the wrongful act which caused the death was assault and battery, the one year period fixed in Courts Article, § 5-105, would appear to apply.