THE SWARTHMORE COMPANY, ET AL. *v.* KAESTNER, ET AL.

[No. 395, September Term, 1969.]

*Decided June 23, 1970.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SMITH, JJ.

*Eugene P. Smith,* with whom were *M. William Adelson* and *Andrew E. Adelson* on the brief, for The Swarthmore Company, one of appellants.

*W. Lee Harrison* for Cities Service Oil Company, other appellant.

*Thomas G. Bodie* and *Gordon G. Power,* with whom were *Power & Mosner* on the brief, for appellees.

BARNES, J., delivered the opinion of the Court.

This is an appeal from a decree of the Circuit Court for Baltimore County (Haile, J.), filed December 17, 1969, enjoining the appellants, The Swarthmore Company (Swarthmore) and Cities Service Oil Company (Citgo), from using a one and one-half acre lot with improvements located on the northwest corner of Goucher Boulevard and Putty Hill Road in the Ninth Election District of Baltimore County (Subject Property) as an automotive service station. The principal questions raised by the appellants, Swarthmore and Citgo, are whether the lower court (1) erred in rejecting the appellants' Motion for Summary Judgment and deciding instead that the undisputed facts revealed that the County Council of Baltimore County (County Council) had no right to place the subject property in a Commercial, Supporting Area (C.S.A.) District, and (2) erred in its findings in favor of the appellees, Albert C. Kaestner, Jr., et al. (Kaest-

ner), plaintiffs below, after a trial on issues raised by the pleadings of Swarthmore and Citgo with regard to laches, estoppel, and the standing of the plaintiffs. We are of the opinion that the lower court was in error in refusing to grant the appellants' Motion for Summary Judgment and we need not reach the second question in regard to the correctness of the lower court's findings upon the issues at the trial.

The subject property, as we have observed, consists of one and one-half acres of land, located on the northwest corner of Goucher Boulevard and Putty Hill Road in the Ninth Election District of Baltimore County. Directly across Goucher Boulevard, on the northeast corner of that intersection, is the Eudowood Plaza Shopping Center premises.

In January 1956, at the time of the adoption of the comprehensive zoning map for part of the Ninth Election District of Baltimore County, substantially all of the then proposed Eudowood Plaza premises, including what is now the bed of Goucher Boulevard between the Eudowood Plaza and the subject property, was classified as a Business Local (B-L) zone. The subject property itself was left in a Residential (R-10) zone. In 1967 Swarthmore sought both to have the subject property reclassified to a B-L zone and to obtain a special exception for its use as a filling station. However, at the hearing before the County Board of Zoning Appeals on September 6, 1967, Swarthmore withdrew its application for the special exception since the County Council had enacted Bill No. 40. Bill No. 40 provided that an automotive-service station be "permitted as of right" on a location which is zoned B-L and which is located in an overlying C.S.A. District. Clearly, Swarthmore had decided that it would pursue a C.S.A. designation for the subject property once it obtained the B-L zoning.

While Swarthmore was seeking to have the subject property zoned B-L, the Baltimore County Planning Board was preparing maps of proposed zoning districts, as authorized by Bill No. 40, for submission to the County

Council. On July 11, 1967, the Planning Board held a public hearing on its published preliminary maps; and on September 13, 1967, the Planning Board approved comprehensive zoning District Maps for submission to the County Council. Both the preliminary and finally approved District Maps by the Planning Board showed the subject property as zoned residential and not districted.

The District Maps approved by the Planning Board were submitted to the County Council in October 1967; and on November 8, 1967, the County Council held its own public hearing on these maps. At that time, the subject property still appeared on the maps as residential and not districted, and there was no discussion of the subject property at the November public hearing. On April 1, 1968, Bill No. 23, an ordinance to implement the districting maps recommended by the Planning Board, was introduced in the County Council.

Only two days after Bill No. 23 had been introduced in the County Council, the County Board of Zoning Appeals, by order dated April 3, 1968, granted the reclassification of the subject property to a B-L zone as petitioned by Swarthmore. Among the protestants to the petition for rezoning before the Board of Zoning Appeals were all of the plaintiffs below in the present case (Albert C. Kaestner, Jr., et al.), and the same parties filed a timely appeal from the April 3 order of the Board of Zoning Appeals to the Circuit Court for Baltimore County on May 2, 1968.

It was while the appeal of the subject property's B-L zoning was being taken to the circuit court that the actions of the County Council giving rise to the dispute now before this Court took place. Following the introduction of Bill No. 23 on April 1 and the order of the Board of Zoning Appeals on April 3, the County Council placed the subject property in a C.S.A. District on the maps under consideration. This change from the "undistricted" recommendation of the Planning Board, as originally incorporated in Bill No. 23, was apparently based upon the action of the Board of Zoning Appeals in rezoning the

subject property to B-L, a field examination of the subject property by the County Councilman for the District, and the Commercial, Community Core (C.C.C.) District in which Eudowood Plaza was located on the recommended maps of the Planning Board. Thus amended, Bill No. 23 was passed by the unanimous vote of the County Council on May 9, 1968, and was approved and enacted on May 15, 1968.

After Bill. No. 23 had been enacted and had taken effect, the Circuit Court for Baltimore County, on December 9, 1968, affirmed the April 3 order of the Board of Zoning Appeals which rezoned the subject property B-L. From the circuit court decision there was no further appeal entered to this Court.

The B-L zoning and the C.S.A. districting of the subject property having been apparently determined with finality, Swarthmore and Citgo then formally proposed to locate an automotive-service station on the property, "permitted as of right" by Bill No. 40. Their construction proposal was approved by the appropriate county officials and a permit was duly issued on April 18, 1969. It was after this permit was issued and construction of the station had commenced, that Albert C. Kaestner, Jr., et al., filed their Bill of Complaint for an Injunction in the case now before this Court.

The Bill, filed May 28, 1969, in the Circuit Court for Baltimore County, alleged in essence (1) that the County Council's designation of the subject property as a C.S.A. District "under the Zoning Regulations, as amended by Bill No. 40, was premature, inasmuch as plaintiffs' appeal [from the Board of Zoning Appeals' order of April 3, 1968, reclassifying the subject property B-L] was pending in the Circuit Court for Baltimore County, and there was no final reclassification to B-L of the subject property to permit its designation as a C.S.A. District," and (2) that the districting of the subject property as a C.S.A. District violates "Section 259.2 E of the Zoning Regulations in that the subject property is not contiguous to a C.C.C. District." The specific relief prayed for in the Bill

was that Swarthmore and Citgo be enjoined from constructing the station on the subject property and that their construction permits be rescinded by the County.

In October 1969 Swarthmore and Citgo each filed a Motion for Summary Judgment, pursuant to Maryland Rule 610, on the ground that there was no genuine dispute between the parties in regard to any material fact and that each of the defendants was entitled to judgment in its favor as a matter of law. After considering the argument on the motion, pleadings, admissions of fact, deposition, and affidavits, the lower court filed its decision denying the motion on November 6, 1969. In that decision, Judge Haile determined that there was no dispute in regard to the facts on the issue of whether that portion of the District Map (enacted by Bill No. 23) applicable to the subject property was invalid. The lower court concluded that the C.S.A. District designation was premature and invalid because, in its opinion, "when the C.S.A. District designation was superimposed on the filling station site, the B-L zoning of the site did not have the force and effect of law, because of the presence of the appeal." The lower court's opinion was the result of its construction of Section 22-27 of the Baltimore County Code, 1968, which reads:

> "Any reclassification when granted by the county board of appeals shall, in the absence of an appeal therefrom, have the force and effect of law."

The lower court was also of the opinion that Bill No. 23 did not have "the notice and hearings required by the Charter", although the question was not specifically raised by the pleadings and was not one of the issues raised upon the consideration of the Motion for Summary Judgment.

As we have already indicated, it is our opinion that the lower court (1) misconstrued Section 22-27 so far as it applies to the present case, and (2) if the issue was properly raised at all, it was in error in concluding that Bill

No. 23 did not have the required notice and hearings. It should have granted the Motion for Summary Judgment filed by the appellants in the lower court. We do not find it necessary to decide the correctness of the lower court's findings upon the issues at the trial below.

(1)

As George E. Gavrelis, Director of Planning in the Office of Planning and Zoning of Baltimore County pointed out in his testimony in the lower court, Bill No. 40, permitting the super-imposition of a new district upon existing Euclidian districts already established, for automotive service stations on land zoned for commercial or manufacturing use, is unique, being the first legislation of this character in the United States. It rather combines the concept of the "floating zone" with the more familiar type of "Euclidian" zoning but, instead of having the determination of compliance with the established strict criteria for approval of a "floating zone" application for an individual parcel of land by an administrative body, the *legislative body, itself,* by adopting a comprehensive zoning map, determines the compatibility of automotive service stations on existing Euclidian zones for commercial and industrial uses by super-imposing the C.S.A. zone upon those existing Euclidian zones. It is, as it were, a "floating zone" which is anchored to legislatively determined suitable areas by the imposition of a special type of Euclidian zone upon the existing Euclidian zones. The concept has the desirable characteristics of being a "comprehensive rezoning" as it relates to one particular use necessary but special in character. It is most certainly an ingenious development in the law of zoning and planning, but, in our opinion, is well within the zoning and planning powers granted to Baltimore County as well as within the spirit and purposes of that grant of powers. Indeed, the *general validity* of Bill No. 40 is not challenged in the present case. The appellees contend that its imposition *upon the subject property* by Bill No. 23, adopted pursuant to Bill No. 40, in which the subject property

appears as one of the properties on the 210 zoning maps approved in Bill No. 23, is illegal and improper or that Bill No. 23 is, for other reasons, invalid.

The language of Section 22-27, although not representing a sophisticated expression of the legislative intent, nevertheless does, when carefully analyzed with reference to its legislative history, disclose that intent. The language, in our opinion, means that when a reclassification is granted by the county board of appeals it has the force and effect of law, but that this status of the board's action is subject to the ultimate determination by the courts on appeal. The parenthetical clause "in the absence of an appeal therefrom" was intended to indicate that the board's action was subject to the ultimate result on appeal; it was not intended to provide that pending an appeal, the board's action was completely ineffective. The lower court has, in effect, recast the language in the negative, *i.e.*, that if an appeal is taken the action of the board shall not have any effect pending such an appeal. This, however, is not what Section 22-27 states and is not what it was intended to provide. As we have already stated, the parenthetical clause was intended to indicate that the status of the board's action which has the force and effect of law is subject to the ultimate action of the courts on appeal, not that during the period of the appeal, the board's action is suspended and ineffective.

If, however, it be thought that the language of Section 22-27 was ambiguous, a consideration of the established maxims of construction in such a situation, leads to the same construction we have already indicated is the correct construction.

First of all, in the event of ambiguity, we are to construe legislation so that it will be valid and within the grant of powers to the legislative body enacting the legislation. As Judge Horney, for the Court, in *Groh v. County Commissioners of Washington County*, 245 Md. 441, 445-446, 226 A. 2d 264, 267 (1967) stated, quoting with approval from McQuillin, "Municipal Corporations" (3rd Ed.), § 20:41:

" 'Ordinances are to be construed in the light of, and in harmony with, applicable provisions of charter, state law, constitution and public policy. A particular ordinance is to be construed with reference to the grant of power, in charter or statute, to enact it. Moreover, an ordinance enacted pursuant to a statute should be construed by reading it with the statute, and if the language of both are in substance alike the presumption is indulged that the ordinance was designed to follow the statute.' "

In Section 602 of the Baltimore County Charter, entitled *Powers and functions of the county board of appeals,* in subsection (a) it is provided:

"In *all cases,* the order of the county board of appeals *shall be final,* unless an appeal be taken therefrom in the manner provided in section 604 of this article." (Emphasis supplied.)

Section 604 of the Charter provides for appeals from the County Board of Appeals to the Circuit Court for Baltimore County within 30 days after the Board's decision is rendered by a party to the proceeding who is aggrieved by that decision.

The historical background indicating the need for the delegation of authority to the Board to reclassify land in particular cases has been reviewed by us in *Baltimore County v. Missouri Realty, Inc.,* 219 Md. 155, 148 A. 2d 424 (1959) and in prior cases mentioned in the opinion in that case.

Secondly, we should assume that in drafting Section 22-27 it was intended that the effect of the Board's orders should have the same effect as already provided in Section 602 (a) of the Charter and that the language was not intended to be contrary to the Charter provision. Indeed, in the event of an inconsistency between the provision in the Charter and any contrary provision in Section 22-27, the provision in the Charter would control,

thereby making the provision in Section 22-27 ineffective.

Then, too, Maryland Rule of Procedure B 6 a which deals with administrative appeals, rather than appeals generally, provides that appeals from orders of administrative boards "shall not act as a stay" except by order of court. This provision, repromulgated, effective January 1, 1962, would prevail over any inconsistent provision of Section 22-27 to the extent of such inconsistency as Rule B 6 a is later in point of time from the enactment of Section 22-27 by Bill No. 80 in 1960. We should not presume that the legislative body intended to enact an ineffective and invalid law.

Thirdly, we should assume that the legislative body intended to reach a reasonable, rather than an unreasonable result in enacting Section 22-27. See *Liquor Dealers Credit Control, Inc. v. Comptroller,* 241 Md. 656, 660, 217 A. 2d 571, 573 (1966). In our opinion, it would be unreasonable (if nothing more) to have the official action of the board in reclassifying the zone of a property to be completely suspended and rendered ineffective by the mere entry of an appeal by one of the parties to the proceeding before it pending a determination of the appeal by the Circuit Court. Such an unprecedented power in the hands of a party could lead to obvious abuses, delay and frustration of the exercise of the police power.

Finally, on this point, we should afford great weight to the legislative and administrative interpretation of Section 22-27 as recognizing that the action of the board in reclassification cases was valid and effective immediately upon being taken and was not suspended or ineffective pending an appeal.

In considering the subject property as reclassified to the B-L zone when the Board acted, even though that action was subject to appeal to the Circuit Court, the County Council was following an established practice in Baltimore County which this Court has sanctioned. The practice has long been established to construe the appealable zoning laws and regulations to permit the simultaneous

consideration of petitions for reclassifications and for a special exception pursuant to the provisions of the zoning ordinance in the reclassified zone, thus recognizing that the zoning reclassification is effective even though such action is subject to further appeal, and the special exception necessarily stands or falls with the reclassification upon any appeal which may be taken from the board's order granting the reclassification.

In *Finney v. Halle,* 241 Md. 224, 216 A. 2d 530 (1966), the applicant simultaneously proceeded with the application for a special exception necessarily supported by the reclassification of the property involved in that case to apartment zoning (R-A). We had expressly given approval to this practice in *Tyrie v. Baltimore County,* 215 Md. 135, 140-141, 137 A. 2d 156, 158-159 (1957) in which Judge Hammond (now Chief Judge), for the Court, aptly stated:

> "It is obvious then that as to a particular tract of land the right to the same uses may be obtained, in many instances, either by a reclassification or the granting of a Special Exception. In other instances, if a particular use is to be achieved, it may be necessary to have the lot in question rezoned and also to obtain a Special Exception. This is true if a filling station is to be erected on land not zoned Business, local, or lower. * * * *There is nothing to prevent the owner of such property from petitioning for a reclassification and a Special Exception at the same time* and, indeed, we were told at the argument that this is the standard practice in such cases. (Emphasis supplied.)

The legislative and administrative practice, apparently established simultaneously with the enactment of the legislation in question and uniformly continued thereafter, is entitled to great weight by us in interpreting the legislative intent. See *Sanza v. Md. Board of Censors,* 245 Md. 319, 226 A. 2d 317 (1967) and *Mitchell v. Register of*

*Wills for Baltimore City,* 227 Md. 305, 176 A. 2d 763 (1962).

In the bill of complaint filed in the lower court, it was alleged that Bill No. 23 was invalid because the subject property placed in the C.S.A. District was "not contiguous" to the C.C.C. District directly across Goucher Boulevard from it. Bill No. 40 provides in regard to C.S.A. Districts that they may only be applied "to areas which are contiguous with C.C.C. or C.T. Districts. . ." and "overlie the basic zones of B.L., B.M., B.R. and/or M.L. . . . ." This contention apparently arose because one of the older plats indicated a small strip of land approximately six feet in width zoned R-R between the street and the land lying to the west of Goucher Boulevard so that the C.S.A. District was separated from the C.C.C. zone by this narrow strip of land and was for that reason "not contiguous." The trial court did not pass upon this issue and, although it was discussed in the brief of the appellant, it was not considered in the brief of the appellee. It is not clear that the issue is before this Court on the appeal, Maryland Rule 885; but, inasmuch as it was argued before us, we will consider it.

The District Map indicates that the district lines are drawn to the center of the street in each instance and does not show any narrow strip separating the C.C.C. District across Goucher Boulevard, so that the C.S.A. zone *abuts* the C.C.C. zone at the center of Goucher Boulevard.

Mr. Gavrelis testified that in drawing the district lines "we established the boundary between one district and the other at the center line of the street or on the property line." He also testified that:

> "I would say that in my opinion the tract at Goucher Boulevard and Putty Hill does meet the standards as set forth * * * for a C.S.A. District in Section 259.2 E of the zoning regulations."

In any event, Bill No. 40 does not require that the two

districts "abut" each other, merely that they be "contiguous." In *Black's Law Dictionary,* "contiguous" is defined to mean "in close proximity; near though not in contact; neighboring; adjoining; near in succession; an actual close contact; touching; bounded or traversed by." See *Grand Union Company v. Laurel Plaza, Incorporated,* 256 F. Supp. 78, 81-82 (D. Md. 1966). Cf. *Gruver-Cooley v. Perlis,* 252 Md. 684, 695-96, 251 A. 2d 589 (1969). On any theory, the C.S.A. District is "near" the C.C.C. District and hence is "contiguous" to it even if it be assumed, for the argument, that it did not "abut" it. We find no invalidity in Bill No. 23 because of any failure to comply with the requirement that the C.S.A. District be contiguous to a C.C.C. District.

### (2)

As we have indicated, the issue in regard to whether or not Bill No. 23 allegedly did not have the notice and hearings required by the Charter, was not specifically raised by the pleadings and was not one of the issues raised by the Motion for Summary Judgment. In Paragraph V of the bill of complaint it was alleged that the "plaintiffs had no reason to believe the County Council would on May 9, 1968 change the Zoning District Maps to designate the subject property as a C.S.A. District, contrary to the proposed maps previously displayed and against the recommendation of the Planning Board. * * *." Both Swarthmore and Citgo in their respective answers to Paragraph V of the bill of complaint denied this allegation and alleged, in effect, that the plaintiffs had every reason to believe that the County Council would most likely be requested to create a C.S.A. District which would include the subject property. Swarthmore and Citgo advised the plaintiffs that this was their intention at the hearing on September 6, 1967, before the Board; and, indeed, at that meeting the chairman of the Board stated to one of the plaintiffs (Yeaple) that if the applicant were successful in obtaining the requested B-L zoning, it would attempt to get a district placed on the property which

would allow the erection of a gasoline filling station. It will be observed that the plaintiffs did not specifically allege that there had been a failure to give the requested notice and to conduct the required hearing for Bill No. 23. We do not believe that such a supposed failure can fairly be deduced from the allegations in Paragraph V of the bill of complaint and even those allegations were sharply denied by the answers with specific reasons being alleged which indicate that the plaintiffs were in fact advised that Swarthmore and Citgo would seek to have the County Council include the subject property in a C.S.A. District. There is, however, no testimony directed at these issues, so that it is doubtful that the trial court properly considered the issue at all. The matter was nevertheless decided by the trial court and was briefed and argued before us. We have concluded that we should consider and dispose of the issue.

Title 22, Section 22-21 of the Charter provides:

"After the county council has received a final report of the planning board recommending adoption of any zoning regulations or zoning maps, the county council shall hold one or more public hearings thereon, giving at least twenty days' notice thereof in at least two newspapers of general circulation throughout the county. . . . After expiration of such period of notice, the county council may by an ordinance adopt such regulations or maps subject, however, to such changes or amendments therein as the county council may deem appropriate."

It is clear from the language of this section of the Charter that the County Council is required to have a hearing on the recommendations of the planning board for changes in the zoning regulations or zoning maps, but that after the expiration of such period of notice (20 days) the County Council *may* adopt the recommended regulations or maps but it may also make "such changes or amendments therein as the county council may deem

appropriate." In short, the County Council need not follow the recommendations of the planning board and need not have any *further or additional hearing* in regard to the changes or amendments the County Council may see fit to make. We have held that the County Council is not required to follow the recommendations of the Planning Board. *Miller v. Abrahams*, 239 Md. 263, 272, 211 A. 2d 309, 314 (1965). We have also indicated that a substantial change may be validly made in a proposed comprehensive zoning map after the public hearing has been held on the originally proposed comprehensive zoning map and no additional notice or hearing was required by statutory language quite similar to that used in Sec. 22-21 of the Baltimore County Charter. *Hewitt v. County Commissioners of Baltimore County*, 220 Md. 48, 56, 151 A. 2d 144, 148 (1959). Indeed, in *Ark Readi-Mix Concrete Corp. v. Smith*, 251 Md. 1, 3, 246 A. 2d 220 (1968) we sustained a change made by the County Council in that case on a proposed comprehensive zoning map *requested on the same day the ordinance was passed*, where there had been no prior discussion, proposal or a request for the change made at the hearing on the proposed comprehensive zoning map and, of course, no notice or prior hearing in regard to the requested change.

The lower court relied on our decision in *Walker v. Talbot County*, 208 Md. 72, 116 A. 2d 393 (1955) as limiting changes, after hearing, to *minor* changes. In our opinion, this reliance was misplaced, inasmuch as we read the opinion in *Walker* as merely characterizing the changes in *Walker* as "minor" (which they were) without any attempt on the part of the Court, *to limit* the changes which could be made by the legislative body *to minor changes* only. The provisions of Sec. 22-21 of the Charter does not limit the power of the County Council to any type of changes—minor or substantial—and, in our opinion, there is no such limitation. *Hewitt v. Baltimore County, supra.*

Our predecessors have indicated that the constitutional requirement of due process of law is not violated by the absence of notice, a hearing, or even any evidence when

a legislative body adopts a legislative act. *Mayor & City Council of Baltimore v. Biermann*, 187 Md. 514, 50 A. 2d 804 (1947).

The requirement of notice and a hearing, therefore, rests entirely upon the Charter provision; and, as we have observed, there is no provision in Sec. 22-21 of the Charter for any required notice of hearings for changes or amendments subsequent to the original notice and hearing. Hence no such notice or hearing is required. If it be thought that such a notice or hearing should be required, the remedy is by amendment of the Charter not by a decision of the courts.

> *Decree of December 16, 1969, (filed December 17, 1969) reversed and case remanded to the lower court for entry of a decree dismissing the bill of complaint and requiring the plaintiffs below to pay the costs in that court, the costs in this Court to be paid by the appellees.*