524 A.2d 77

**Alexander J. OGRINZ III et al.**

**v.**

**William S. JAMES et al.**

**No. 150, Sept. Term, 1986.**

Court of Appeals of Maryland.

April 21, 1987.

384

Edward J. Birrane, Jr. (Patrick A. O'Doherty and Barbara Mello, on brief), Baltimore, for appellant.

George A. Nilson and Robert A. Zarnoch, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Kathleen M. Sweeney, Margaret Lee Quinn, Linda H. Lamone, Asst. Attys. Gen., on brief), Baltimore, for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, COUCH, McAULIFFE and ADKINS, JJ.

MURPHY, Chief Judge.

This case primarily involves a challenge to the constitutionality of Chapter 281 of the Acts of 1986, which authorized the incorporation, capitalization and operation of a mutual insurance company for the purpose of writing policies of lawyers' professional liability insurance.

## I

By Chapter 713 of the Acts of 1977, the General Assembly added Subtitle 40 to the Insurance Code entitled: "Legal Mutual Liability Insurance Society of Maryland." Codified as Md.Code (1957, 1972 Repl.Vol., Cum.Supp.1977) Art. 48A, §§ 566–574, the Act's purpose, as provided in § 567(a), was

> "to provide a mechanism for the payment of indemnities to persons suffering injury arising out of the rendering of or the failure to render professional services by attorneys and to provide a mechanism for attorneys to obtain insurance against liability for injury due to the rendering of or failure to render any professional service...."

Section 567(b) provided that the Act would become effective upon a finding by the Insurance Commissioner

> "that a substantial number of attorneys are or within six months will be unable to obtain legal malpractice insurance from insurers admitted to write such insurance in Maryland and that the lack of such insurance is hampering the practice of law in Maryland and thereby affecting the ability of the citizens of Maryland to obtain proper legal representation or services."

Section 568(a) provided that, subject to compliance with § 567(b), the Legal Mutual Liability Insurance Society of Maryland (Legal Mutual) would be created as a nonstock corporation. Section 569(d) specified the types of professional liability insurance policies that the Society could issue. Chapter 713 did not contain any means of capitalizing Legal Mutual, and the Act's provisions were never implemented.

Codified as Code (1957, 1986 Repl.Vol.) Art. 48A, §§ 244–244V, Subtitle 16B was added to the Insurance Code by Chapter 737 of the Acts of 1984. Its purpose, as stated in § 244(b), was

"(1) [t]o protect policyholders and the public against the adverse effect of excessive, inadequate, or unfairly discriminatory rates;

(2) [t]o encourage, as the most effective way to produce rates that conform to the standards of paragraph (1) of this subsection, independent action by and reasonable price competition among insurers;

(3) [t]o provide formal regulatory controls for use if price competition fails;

(4) [t]o authorize cooperative action among insurers in the rate-making process, and to regulate such cooperation in order to prevent practices that tend to bring about monopoly or to lessen or destroy competition; and

(5) [t]o provide rates that are responsive to competitive market conditions and to improve the availability of insurance in the State."

Prior to this enactment, insurers were required to file proposed rates with the Insurance Commissioner thirty working days before their effective date; and unless the Commissioner disapproved the proposed rates within that period, they became effective. § 242(d). Subtitle 16B, effective July 1, 1984, changed this process for many types of insurance, including lawyers' professional malpractice insurance. Section 244D established ratemaking standards, and § 244E(a) required covered insurers to file information and rates by the date that they became effective. If the

Insurance Commissioner questioned whether insurers were complying with § 244D, § 244–I provided a mechanism for determining compliance, and § 244K authorized the Commissioner to require prior approval of all new rates. Before doing so, however, the Commissioner was required to conduct a hearing to determine whether a reasonable degree of competition existed for the type of insurance under investigation. § 244–I(c)(1); § 244K(a)(1). At this hearing, the insurer carried the burden of establishing that a reasonable degree of competition existed within the particular market. § 244–I(c)(1).

Amid growing concern about the availability and cost of legal malpractice insurance, the Insurance Commissioner held a Subtitle 16B hearing on November 14, 1984. 11 Md.Reg. 1948 (1984). As a result, he found that reasonable competition did not exist in the legal malpractice insurance market, and he invoked the provisions of § 244K that required insurers to justify all rate increases prior to their effective date. 12 Md.Reg. 741 (1985). Without further action by the Insurance Commissioner, that order remained effective for one year. § 244K(c). On February 10, 1986, the Insurance Commissioner again determined, based on a hearing held on January 30, 1986, that a reasonable degree of competition did not exist in the legal malpractice insurance market. 13 Md.Reg. 720 (1986). That order expired February 10, 1987.[1]

Chapter 281 of the Acts of 1986, an emergency bill that took effect on April 29, 1986, amended Subtitle 40 of the Insurance Code in a number of particulars in order to facilitate the creation and operation of Legal Mutual. Amended § 567(b) provided that Subtitle 40, as amended, would become effective thirty days after the Insurance Commissioner (1) received a petition from the Maryland

---

1. By order dated April 2, 1987, based on a hearing held on March 17, 1987, the Insurance Commissioner again concluded that a reasonable degree of competition did not exist in the legal malpractice insurance market.

State Bar Association (MSBA) requesting Legal Mutual's establishment and (2) determined "that a reasonable degree of competition does not exist in the State for legal professional liability insurance under Subtitle 16B of this Article." Section 567(b)(2) provided that, if the Commissioner "has not issued an order finding that a reasonable degree of competition does not exist for legal professional liability insurance before receiving the [MSBA] petition," he must hold a hearing within ten days of the receipt of the petition and pass an order within fifteen days thereafter. The Subsection further specified that, if the Commissioner determined that "a reasonable degree of competition does not exist," then the provisions of amended Subtitle 40 "shall become effective immediately on the date of the Commissioner's order." Upon taking effect, the Governor is required by § 569 to appoint a Board of Directors to govern the Society and to direct its incorporation. The Society is not an agency or instrumentality of the State, and the State may not budget for or provide general fund appropriations for it. § 568(e).

In addition to the types of insurance originally authorized to be written by Legal Mutual under Chapter 281 of the Acts of 1976, amended § 569(c)(4) authorized it to write property, casualty and surety insurance "related or incidental to the practice of law or to the facilities, equipment and premises used by attorneys in the practice of law." [2]

---

2. Legal Mutual is also empowered by the statute (§ 569(c)) to underwrite:

"(1) Insurance against liability of attorneys for injury arising out of the rendering of or failure to render professional services by the insured;

(2) Insurance against the liability of any person for whose acts or omissions an attorney is responsible under the provisions of paragraph (1), or with whom he is associated, including partners, employees, employers, associates, consultants, or a professional service corporation whose stock is owned by an insured;

(3) Insurance against other liability for injury by persons employed in, by property used in, or by activities incidental to, the practice of law by the named insured, when issued as incidental

Section 570(a) of the 1986 Act made provision for certification to the State Treasurer within thirty days after Legal Mutual's incorporation of "a list of all attorneys admitted to practice law in the State as shown in the records of the Clients' Security Trust Fund ... on the date of the Society's incorporation." Section 570(b) mandated the imposition upon all such attorneys of a "special one-time tax for the privilege of practicing law in the State" in the amount of $150, to be collected by the State Treasurer. Section 570(c) provided, *inter alia*, that failure to pay the tax would result in a lien being imposed upon the attorney's real and personal property. Section 570(d)(1) "dedicates the proceeds of the tax ... as the initial policyholders' surplus of the Society." Section 570(e) makes provision for a nonrefundable "membership fee which shall be payable by an attorney at the time of application to the Society for a policy of insurance." This subsection further provides that the membership fee may not be credited against any premium payable to the Society for a policy of insurance, but that an attorney who has paid the tax "shall be credited with the amount of the tax paid against his liability for any membership fee." Section 570(f) provides that, upon payment of the membership fee, an attorney may be insured by the Society "for any and all hazards customarily insured by the Society, subject to any coverage limitations specified by the Society in accordance with policy limitations, exclusions, conditions, deductibles, and loss-sharing requirements." Under § 572(c), Legal Mutual is authorized to "refuse to underwrite or cancel any risk that does not meet its underwriting standards subject to the applicable provisions of this Title."

## II

On May 14, 1986, the MSBA petitioned the Insurance Commissioner to create Legal Mutual. Thereafter, by let-

---

coverage with or supplemental to insurance specified in paragraph (1)...."

ter dated May 20, 1986, the Commissioner determined that the requirements of § 567(b) had been met by the order of February 10, 1986; he, therefore, authorized the creation of Legal Mutual. The Governor then appointed the initial Board of Directors of the Society, and the Insurance Commissioner approved its incorporation on July 1, 1986.

A number of attorneys filed a declaratory judgment action in the Circuit Court for Baltimore City, mounting a broad-based challenge (a) to the constitutionality of the amendments to Subtitle 40, as enacted by Chapter 281 of the Acts of 1986 and (b) to the legality of Legal Mutual's activation under the provisions of the statute. Among others, a declaration was sought that the tax was unconstitutional and that the Society's incorporation was unlawful. The court (Kaplan, J.) declared the Act constitutional in all of the challenged respects and determined that Legal Mutual had been lawfully created. We granted certiorari upon the appellants' appeal to the Court of Special Appeals to consider the significant issue of public importance involved in the case.

## (A)

### *Activation of Legal Mutual*

■ Appellants first contend that § 567(b)(1) requires the Insurance Commissioner, as a condition precedent to the lawful creation of Legal Mutual, to hold a Subtitle 16B hearing *after* the effective date of the 1986 amendments to Subtitle 40, as enacted by Chapter 281 of the Acts of 1986. They argue that the Commissioner's order of February 10, 1986 did not satisfy this requirement and, as a result, the essential triggering mechanism for the lawful creation of Legal Mutual was not observed. We disagree.

Section 567(b)(1) does not specify when the Insurance Commissioner must make the Subtitle 16B determination of whether a reasonable degree of competition exists within the legal malpractice insurance field. We think it clear, however, from the provisions of § 567(b)(2) and of Subtitle

16B and from the legislative history underlying enactment of Chapter 281 that the Legislature did not require that that triggering determination be made only after the effective date of Ch. 281.

As we earlier noted, § 567(b)(1) does contain a clear formulation for determining whether a reasonable degree of competition exists when the Insurance Commissioner receives the MSBA petition *before* issuing an order under Subtitle 16B. This legislative recognition that the petition might precede the Commissioner's determination of the degree of competition indicates that it intended to permit the Commissioner to rely on prior orders and thus, intentionally omitted a requirement that the Commissioner make a new finding after the passage of Ch. 281. *See American Security v. Amsterdam,* 246 Md. 36, 41, 227 A.2d 214 (1967).

Second, § 567(b)(1) expressly refers to Subtitle 16B. Under § 244–I(a) of that Subtitle, the Commissioner's finding of no reasonable degree of competition remains in effect for one year. Of course, the Legislature is presumed to know the existing law and to take it into account when enacting new legislation. *Board of Educ., Garrett County v. Lendo,* 295 Md. 55, 63, 453 A.2d 1185 (1982). Thus, we conclude that the General Assembly intended to give full effect to the provisions of Subtitle 16B and the Commissioner's orders promulgated pursuant to its provisions. Consequently, an order issued prior to the passage of Ch. 281 would satisfy the requirement of § 567(b)(1).

Finally, the legislative history demonstrates that the General Assembly knew when it enacted Ch. 281 that the Commissioner had already issued an order under Subtitle 16B. At committee hearings on the proposed legislation (SB 753), several witnesses noted the existence of such an order and suggested that the bill be amended to require an independent hearing. The Senate Committee report on the bill explained, however, that the Commissioner had already issued an order under Subtitle 16B and thus, a petition from the MSBA of itself would trigger the creation of Legal

Mutual. For these reasons, we conclude that § 567(b)(1) does not require the Commissioner to make a no-competition finding under Subtitle 16B after the enactment of Ch. 281.

## (B)

### *Procedural Due Process*

■ Appellants claim that their rights were affected by the Commissioner's no-competition determination of February 10, 1986. Having had no notice of the January 30, 1986 hearing, or an opportunity to be heard prior to the issuance of the Commissioner's February 10, 1986 order, appellants suggest that their procedural due process rights were violated. As a consequence, they urge that we hold that Legal Mutual was not lawfully created under the statute and that the tax imposed under its provisions was, therefore, void and of no effect.

As we have already indicated, the General Assembly had knowledge of the Commissioner's February 10, 1986 order. That it did not require a second such finding after Ch. 281's enactment is tantamount to a legislative determination that a reasonable degree of competition did not exist in the legal malpractice insurance market. In such circumstances, appellants have no due process right to notice and an opportunity to be heard prior to such a legislative finding. *See Swarthmore Co. v. Kaestner*, 258 Md. 517, 532–33, 266 A.2d 341 (1970). Thus, the claimed denial of procedural due process does not prevent the use of the Commissioner's earlier order to activate Legal Mutual.

## (C)

### *Public Purpose*

Appellants contend that Legal Mutual does not serve a public purpose and thus violates Article 15 of the Maryland Declaration of Rights, which provides, in pertinent part:

"all taxes thereafter provided to be levied by the State for the support of the general State Government, and by

the Counties and by the City of Baltimore for their respective purposes, shall be uniform within each class or sub-class of land, improvements on land and personal property which the respective taxing powers may have directed to be subjected to the tax levy; yet fines, duties or taxes may properly and justly be imposed, or laid with a political view for the good government and benefit of the community."

According to appellants, the statute imposes a tax solely to benefit a private entity and provides no benefits to the public. They also object to provisions of the statute that allow Legal Mutual to write property, casualty, and surety insurance and to refuse professional liability insurance to lawyers not meeting Legal Mutual's underwriting standards. Appellants suggest that these provisions emphasize the private purpose of the statute. We disagree.

We have consistently interpreted Article 15 to require a public purpose for all taxes. *Allied American Co. v. Comm'r,* 219 Md. 607, 616, 150 A.2d 421 (1959); *Frostburg v. Jenkins,* 215 Md. 9, 16, 136 A.2d 852 (1957); *Board of Education v. Wheat,* 174 Md. 314, 319, 199 A. 628 (1938); *Finan v. M. & C.C. of Cumberland,* 154 Md. 563, 565, 141 A. 269 (1928); *Balto. & E.S.R. Co. v. Spring,* 80 Md. 510, 517, 31 A. 208 (1895). The use of public funds to benefit private institutions does not, by itself, determine that a tax serves no public purpose. *Johns Hopkins Univ. v. Williams,* 199 Md. 382, 401, 86 A.2d 892 (1952). The Legislature has the primary responsibility for determining whether a particular revenue measure serves a public purpose. *Snowden v. Anne Arundel County,* 295 Md. 429, 435, 456 A.2d 380 (1983). We have recognized that the definition of public purpose will change in response to changing social and economic conditions. *Frostburg, supra,* 215 Md. at 16, 136 A.2d 852. Thus, if "the legislation has a substantial relation to the public welfare and can fairly be said to serve a public purpose," *id.* at 19, 136 A.2d 852, we will not hold the statute violative of Art. 15. Chapter 281 satisfies these requirements.

■ Clearly, the availability of malpractice insurance is important to the public as well as to lawyers and their clients. *See Attorney General v. Johnson,* 282 Md. 274, 281 n. 8, 385 A.2d 57, *appeal dismissed,* 439 U.S. 805, 99 S.Ct. 60, 58 L.Ed.2d 97 (1978); Maryland Code (1957, 1986 Repl.Vol.) Art. 48A, § 566(a). The Insurance Commissioner has determined that a reasonable degree of competition does not exist in the legal professional liability insurance market. 13 Md.Reg. 720 (1986); 12 Md.Reg. 741–42 (1985). The Legislature has the power to address those problems in whatever constitutionally rational way it chooses. *Johnson, supra,* 282 Md. at 308, 385 A.2d 57. The provisions to which appellants object do not detract from the statute's public purpose; rather, as discussed below, the General Assembly may have considered them important to the successful operation of Legal Mutual. Thus, we conclude that appellants have not demonstrated the unconstitutionality of Chapter 281.

## (D)

### Due Process/Equal Protection

Appellants contend that several provisions of Chapter 281 violate due process and equal protection guarantees.[3] That the court has a limited role in reviewing economic regulatory legislation under the due process and equal protection clause is well settled. We defer to the Legislature unless the challengers demonstrate that the particular statute is clearly arbitrary, oppressive, or unreasonable. We do not judge the wisdom of a particular legislative enactment as

---

**3.** Appellants do not state whether they base these claims on the Maryland Declaration of Rights or the federal constitution. We have consistently considered guarantees in the Declaration of Rights to be in *pari materia* with similar provisions of the federal constitution. Thus, we apply the same standards whether the claim alleges violation of a state or federal constitutional right. *Attorney General v. Waldron,* 289 Md. 683, 704–05, 426 A.2d 929 (1981); *Pitsenberger v. Pitsenberger,* 287 Md. 20, 27, 410 A.2d 1052, *appeal dismissed,* 449 U.S. 807, 101 S.Ct. 52, 66 L.Ed.2d 10, *reh'g denied,* 449 U.S. 1028, 101 S.Ct. 601, 66 L.Ed.2d 491 (1980).

long as any considerations related to the public welfare support it. *New Orleans v. Dukes*, 427 U.S. 297, 303–04, 96 S.Ct. 2513, 2516–17, 49 L.Ed.2d 511 (1976); *State v. Good Samaritan Hospital*, 299 Md. 310, 325–26, 473 A.2d 892 (1984); *Westchester West No. 2 v. Mont. Co.*, 276 Md. 448, 455, 348 A.2d 856 (1975).

Appellants particularly object to the Legislature's failure to exempt government and retired attorneys from the tax, the provisions for a credit of the tax against the membership fee, Legal Mutual's authority to deny coverage to an attorney, and its authority to write property, casualty, and surety insurance in addition to professional liability policies. These provisions, they say, demonstrate that Ch. 281 is arbitrary, oppressive, and unreasonable and thus violates due process.

■ The challenged provisions, however, merely represent permissible legislative choices concerning the proper way to address the problem of availability of legal liability insurance. For example, the General Assembly could have determined that taxing all attorneys was necessary to fund the policyholders' initial surplus. Furthermore, it could have reasoned that a credit against membership fees would be an incentive for lawyers to join Legal Mutual, which would help to ensure its success. Certainly, provisions related to the success of a legislative attempt to address an economic-social problem relate to the public welfare. We agree with the State that it is a valid exercise of the police power in the circumstances here present, to stabilize and to create or increase competition in the lawyers' professional liability insurance market. Substantive due process concerns are not transgressed when, as here, the legislative purpose was to prevent lawyers from being denied access to reasonably priced and reliable insurance coverage in order to ensure that they continue to provide essential legal services to the public and to ensure that adequate malpractice coverages exist to protect the public.

■ As to equal protection considerations, it is conceded that any statutory classification under Chapter 281 need

only have a rational basis to withstand constitutional attack. Thus, any set of facts on which the Legislature reasonably could have based its decision will sustain such a statutory classification. *Nordheimer v. Montgomery County,* 307 Md. 85, 102, 512 A.2d 379 (1986); *Good Samaritan, supra,* 299 Md. at 328–29, 473 A.2d 892; *Governor v. Exxon Corp.,* 279 Md. 410, 439, 370 A.2d 1102 (1977), *aff'd,* 437 U.S. 117, 98 S.Ct. 2207, 57 L.Ed.2d 91 (1978). Appellants contend that the Legislature's decision to credit the tax against membership fees for attorneys who join Legal Mutual has no rational basis and thus violates the equal protection clause. As earlier discussed, however, the General Assembly could have determined that the tax credit would encourage membership in Legal Mutual and help to ensure its success. Thus, the exemption from the tax for those lawyers who join Legal Mutual has a rational basis and does not violate the equal protection clause.

### (E)

### *Delegation of Taxing Power*

■ The state has the inherent power to tax, limited only by the state and federal constitutions. *See Katzenberg v. Comptroller,* 263 Md. 189, 205, 282 A.2d 465 (1971). Article 14 of the Maryland Declaration of Rights requires that no tax be levied without the consent of the General Assembly. Appellants claim that Chapter 281 unconstitutionally delegates this taxing power to Legal Mutual. They appear to reason as follows: (1) That § 570(b) imposes a tax on all attorneys admitted to practice in Maryland on the date of Legal Mutual's incorporation; (2) that § 570(e) requires that Legal Mutual credit this tax against any membership fee; (3) that § 572(c) allows Legal Mutual to refuse to underwrite any risk or class of risks; and (4) that Legal Mutual therefore determines who must pay the tax and who receives a credit or rebate. This argument has no merit.

The General Assembly clearly has imposed the tax and determined who shall receive a credit. Neither § 570(b) nor

§ 570(e) leaves any discretion to Legal Mutual. Certain attorneys must pay the tax and are entitled to a credit against membership fees if they choose to join Legal Mutual. Although Legal Mutual may refuse to underwrite particular risks, those decisions must be in accord with acceptable underwriting practices as defined by the Insurance Code. § 572(c). Thus, Legal Mutual does not have the unfettered discretion to deny coverage and thus determine which attorneys receive a rebate of the tax imposed by § 570(b).

### (F)

### *Property Tax*

■ Apellants contend that the tax imposed by § 570(b) is a property tax and thus subject to the uniformity requirements of Article 15 of the Maryland Declaration of Rights. They say that the fact that nonpayment of the tax results in a lien on property transforms the purported privilege tax into a property tax. We disagree.

In *Weaver v. Prince George's County,* 281 Md. 349, 356, 379 A.2d 399 (1977), we listed the factors that assist a court in determining the nature of a particular tax, i.e. "the designation placed upon the tax by the Legislature, the subject matter of the tax, and the incidents of the tax, *i.e.,* the manner in which it is assessed and the measure of the tax." In this case, the General Assembly imposed the tax for the privilege of practicing law in Maryland. § 570(b). Such a designation is entitled to considerable weight. *Weaver, supra,* 281 Md. at 356, 379 A.2d 399. The legislature directly imposed the flat tax without regard to the value of the lawyer's property or assets. These incidents of the tax support the interpretation of the tax as an excise or privilege tax.

Although nonpayment of the tax may result in a lien on the lawyer's property, so too does failure to pay income, sales, and use taxes. *See* Code (1957, 1980 Repl.Vol., Cum. Supp.1986) Art. 81, §§ 322(1), 342(b), 393(b). Yet we have

consistently held that all three taxes are not property taxes required to be uniform by Article 15 of the Declaration of Rights. *E.g., Rafferty v. Comptroller,* 228 Md. 153, 178 A.2d 896 (1962); *Lane Corp. v. Comptroller,* 228 Md. 90, 178 A.2d 904 (1962). Thus, we hold that the tax imposed by § 570(b) is an excise tax not subject to constitutional uniformity requirements.

### (G)

### *Title of Chapter 281*

■■■ Appellants contend that Ch. 281 is unconstitutional because its title violates Article III, § 29 of the Maryland Constitution, which requires that "every Law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title...." Appellants urge that the phrase in the bill's title—"authorizing the levy of a certain tax"—does not describe sufficiently the tax imposed by § 570(b) for the privilege of practicing law. This argument has no merit.

Section 29 requires that the title to a bill inform members of the legislature and the public about the bill's nature. *Whiting-Turner Contract. Co. v. Coupard,* 304 Md. 340, 361, 499 A.2d 178 (1985). It does not require that the title include an abstract of the bill's contents. *Equitable Life v. State Comm'n,* 290 Md. 333, 342, 430 A.2d 60 (1981); *City of Baltimore v. State,* 281 Md. 217, 225, 378 A.2d 1326 (1977). Chapter 281 clearly satisfied these requirements. Its title informed the legislature and general public that the bill would levy a tax, and the statute does levy a tax. Greater specificity is not required.

### (H)

### *Disputed Facts*

The circuit court, after fully declaring the rights of the parties and refusing to grant the declaratory relief sought by the appellants, entered summary judgment against appellants. Notwithstanding the court's declaratory judgment adjudicating the appellants' rights, they contend that

the trial judge erred in entering summary judgment because a genuine dispute of material fact exists in the case. Specifically appellants claim that the disputed facts relate to whether a reasonable degree of competition actually exists in the legal malpractice insurance market.

Our cases hold that it is not essential that a declaratory judgment be in any particular form as long as the court, by its judgment, actually passes upon or adjudges the issues raised by the pleadings. *Bruce v. Dir., Chesapeake Bay Aff.,* 261 Md. 585, 588 n. 1, 276 A.2d 200 (1971); *Reddick v. State,* 213 Md. 18, 31, 130 A.2d 762 (1957). The trial judge correctly concluded that the issues raised by appellants were solely matters of law. Indeed, implicit in the legislation creating Legal Mutual is a legislative determination that a need existed for it in the legal malpractice insurance market. Moreover, the legislature sanctioned the Commissioner's finding of fact that a reasonable degree of competition did not exist in that market. Neither finding could be challenged in the declaratory judgment action and, accordingly, the court did not err in entering the summary judgment as part of its declaratory ruling in adjudicating the rights of the parties.

JUDGMENT AFFIRMED; APPELLANTS TO PAY COSTS.